No. 2--08--0995     Filed:  11-13-09

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| DANIEL ECKBURG, Indiv. and as Special Adm'r of the Estate of Kristi Eckburg, Deceased, | ) ) ) ) | Appeal from the Circuit Court of Ogle County. |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | No. 08--L--1 |
| PRESBYTERY OF BLACKHAWK OF THE PRESBYTERIAN CHURCH (USA), | ) ) ) | Honorable Stephen C. Pemberton, |
| Defendant-Appellee. | ) | Judge, Presiding. |

JUSTICE BOWMAN delivered the opinion of the court:

Plaintiff, Daniel Eckburg, individually and as special administrator of the estate of Kristi Eckburg, appeals the September 24, 2008, trial court order dismissing his complaint against defendant, Presbytery of Blackhawk of the Presbyterian Church (USA). Plaintiff's complaint pleaded negligence, wrongful death, and survival actions against defendant after a tragic motorcycle accident that occurred on August 11, 2007. We reverse and remand.

I.  BACKGROUND

On March 18, 2008, plaintiff filed his complaint alleging the following facts and claims. Defendant owned the real property adjoining the 2000 block of Illinois Route 2 in Rockvale Township in Ogle County. On that property, defendant operated a four-season conference, retreat, and camping center. On August 11, 2007, the property was densely wooded and had a number of

rotted and otherwise defective trees immediately adjacent to Illinois Route 2. The rotted and defective trees were on the easement for Illinois Route 2 and were located within several feet of the road's edge. Illinois Route 2 was a heavily traveled rural road that connected the cities of Rockford, Byron, Oregon, and Dixon. Residential areas and subdivisions surrounded defendant's property to the north, south, and west, and Illinois Route 2 was the primary means of travel for their residents.

The complaint further alleged that defendant received actual notice that there were trees on the property adjoining Illinois Route 2 that were in a defective or unsound condition and that posed a threat of falling onto the roadway. Gordon Bell provided such notice to defendant by telephone and stated that there was at least one "precariously perched" tree along Illinois Route 2 that presented a danger of falling onto the roadway. Bell called defendant's office with this information one week prior to the August 11, 2007, accident. Plaintiff alleged that defendant owed a duty to him and to the general public to exercise reasonable care in the inspection and maintenance of the trees upon the property immediately adjoining Illinois Route 2. Further, defendant owed a duty to plaintiff and the general public to respond upon receipt of a complaint of trees that were defective and posed a danger.

On August 11, 2007, plaintiff was driving a motorcycle with his wife, Kristi, as his passenger south on Illinois Route 2, including the portion of the road that bordered defendant's property. While plaintiff was driving, a large portion of a tree located on defendant's property fell onto the roadway and struck plaintiff's motorcycle, causing severe injuries to plaintiff and Kristi's death. In count I, plaintiff alleged that defendant was negligent because it: (1) failed to reasonably inspect the trees on the property when it knew or should have known that some of the trees presented a risk to motorists on the roadway; (2) failed to inspect the trees for indications of defective or unsound conditions that

could result in trees falling onto the roadway; (3) failed to prune, trim, and remove defective limbs or trees that were located on the property immediately adjacent to the roadway; (4) failed to maintain the property free from unreasonable risks to motorists; (5) disregarded notice of defective trees on the property immediately adjacent to the roadway; and (6) failed to properly inspect or maintain trees upon the property after receiving notice of the dangerous conditions of trees located near the roadway. As a result of defendant's negligence, plaintiff sustained severe and permanent injuries.

In count II, plaintiff alleged the same negligent acts to support the wrongful death claim pursuant to the Wrongful Death Act (740 ILCS 180/1 et seq. (West 2006)). In count III, plaintiff alleged the same negligent acts to sustain the survival action pursuant to section 27--6 of the Probate Act of 1975 (755 ILCS 5/27--6 (West 2006)).

In an answer to defendant's interrogatory, plaintiff stated that it was "a large tree" that fell onto Illinois Route 2 immediately in front of plaintiff's motorcycle. Plaintiff identified the location of the tree, before it fell, as follows:

> "Before the tree at issue fell upon Illinois Route 2, the distance from the base of the tree to the west edge of the road surface was 14 feet, 3 inches; the tree was 1749 feet, 9 inches from the center of Mud Creek Road, traveling south; additionally, the tree was 1454 feet, 7 inches from the center of the bridge on Route 2 that goes over Mud Creek."

On June 12, 2008, defendant filed a motion to dismiss pursuant to section 2--619 of the Code of Civil Procedure (Code) (735 ILCS 5/2--619 (West 2008)). Defendant argued that an affirmative matter barred plaintiff's claims as a matter of law and, thus, dismissal was warranted. Defendant argued that Illinois follows section 363 of the Restatement (Second) of Torts (Restatement (Second) of Torts §363, at 258 (1965)), which provides:

"§363. Natural Conditions

(1) Except as stated in Subsection (2), neither a possessor of land, nor a vendor, lessor, or other transferor, is liable for physical harm caused to others outside of the land by a natural condition of the land.

(2) A possessor of land in an urban area is subject to liability to persons using a public highway for physical harm resulting from his failure to exercise reasonable care to prevent an unreasonable risk of harm arising from the condition of trees on the land near the highway."

Defendant argued that because its land was not in an urban area, defendant cannot be held liable for plaintiff's injuries as a matter of law. Defendant's land encompassed 360 acres of wooded, elevated, and undeveloped property in an area between the rural communities of Byron and Oregon. Defendant submitted an aerial photograph of the land to dispute plaintiff's claim that defendant's property is bordered by residential areas and subdivisions to the north, south, and west. Defendant also attached an affidavit of Reverend John E. Rickard, the General Presbytery and overall manager of the property. Reverend Rickard attested to the fact that the property consisted of 360 acres of heavily wooded land with cliffs, sharp elevation changes, and natural growth of trees. He further attested to the accuracy of a photograph of the downed tree and the aerial photograph of the area. In support of its position, defendant cited Mahurin v. Lockhart, 71 Ill. App. 3d 691 (1979), and Hammond v. SBC Communications, Inc., 365 Ill. App. 3d 879 (2006), overruled on other grounds, Vision Point Sale, Inc. v. Haas, 226 Ill. 2d 334, 348-49 (2007).

Plaintiff argued that Mahurin was distinguishable from the facts here but noted that in dicta, the Mahurin court expanded section 363's rule by holding that liability depended upon the actual

facts of the case and would not necessarily end at the owner's property line. Plaintiff argued that the actual facts of this case supported the imposition of a duty on defendant to maintain the trees on its property bordering the major roadway and that the court should not adopt different rules for urban areas and rural areas without considering all of the facts. Plaintiff was not arguing that defendant was required to inspect the trees on all 360 acres but only those trees that were close to the roadway. Plaintiff further argued that Hammond was inapplicable because it involved whether a utility company had a duty to maintain trees on the land on which it possessed a utility easement. Because Hammond did not involve the actual property owner's duty to maintain the trees, plaintiff argued that it did not apply to the facts of this case and that the court's commentary regarding section 363 was merely dicta. Finally, plaintiff argued that this case was different from the cited cases because here defendant had received actual notice of the presence of defective trees on its property. In support of his position, plaintiff cited Ray v. Cock Robin, Inc., 57 Ill. 2d 19 (1974) (finding that directed verdict was improper where the plaintiff presented some evidence that the defendant had notice that its placement of picnic tables near roadway posed a danger to diners because of the potential that a car may veer off the road).

On September 24, 2008, the trial court issued its order, stating the following. The court believed that adopting the strict rule of section 363 was considered overly simplistic by many courts, given the intermediate patterns of land use that now exist in this country. The court then ruled that "[a]s to notice, the Plaintiff's pleadings are insufficient to allege that the Defendant had either actual or constructive notice of a defective condition in the tree in question." The court stated that plaintiff's allegation that defendant had actual notice that there were dangerous trees near the highway was insufficient to allege that defendant had notice that the actual tree in question was

defective. Plaintiff further, according to the court, did not plead that an inspection would have disclosed that this particular tree posed a hazard to motorists. The court noted that "[w]hile this finding may place a heavy burden on the Plaintiff, to rule otherwise would be to place an onerous and inappropriate duty of inspection on the Defendant." Finally, the court stated that to impose a duty to inspect the trees surrounding a roadway would "truly undermine the rationale of protecting rural landowners from onerous obligations. Many state highways pass through densely wooded areas. Additionally the issue of how much traffic is required to trigger the duty is not easily determinable." Thus, the court granted defendant's section 2--619 motion, finding that the pleadings and affirmative matters established that the accident occurred in a rural area, that defendant had no actual or constructive notice of the defective condition of the tree in question, and that, absent notice, defendant is immune from liability as stated in section 363 of the Restatement (Second) of Torts. Plaintiff timely appealed.

## II. ANALYSIS

The purpose of a section 2--619 motion to dismiss is to dispose of issues of law and easily proved issues of fact at the start of litigation. Van Meter v. Darien Park District, 207 Ill. 2d 359, 367 (2003). The Code permits involuntary dismissal where the claim asserted against the defendant is barred by some affirmative matter avoiding the legal effect of or defeating the claim. 735 ILCS 5/2--619(a)(9) (West 2008); Van Meter, 207 Ill. 2d at 367. An affirmative matter under section 2--619 is something in the nature of a defense that negates the cause of action completely. Van Meter, 207 Ill. 2d at 367. The moving party admits the legal sufficiency of the complaint, but asserts an affirmative defense or other matter to defeat the plaintiff's claim. Van Meter, 207 Ill. 2d at 367. When a court rules on a section 2--619 motion to dismiss, it must interpret all pleadings and

supporting documents in the light most favorable to the nonmoving party. Van Meter, 207 Ill. 2d at 367. We review de novo a trial court's grant of a section 2--619 motion to dismiss. Van Meter, 207 Ill. 2d at 367.

On appeal, plaintiff makes many of the same arguments he made in his response to defendant's motion to dismiss. According to plaintiff, the court should not mindlessly adopt the strict rule of section 363 when various factual scenarios make the enforcement of such a rule unfair. Here, while the area was rural, the presence of a heavily traveled highway created the need to impose on defendant the same duty as that on a defendant in an urban area, because the risk of harm to the traveling public was similar and the burden to inspect the trees bordering the roadway was not onerous. Further, plaintiff argues that the fact that defendant was given actual notice of the presence of defective trees near the roadway gave reason to impose a duty on defendant. Plaintiff argues that the trial court was incorrect in finding that there was no actual or constructive notice.

The existence of a duty is a question of law for the court to decide. Adams v. Northern Illinois Gas Co., 211 Ill. 2d 32, 43-44 (2004). There can be no recovery in tort for negligence unless the defendant has breached a duty owed to the plaintiff. Adams, 211 Ill. 2d at 44. Duty is a question of whether the defendant and the plaintiff stood in such a relationship to one another that the law imposed upon the defendant an obligation of reasonable conduct for the benefit of the plaintiff. Adams, 211 Ill. 2d at 44. In determining whether a duty exists, a court looks to certain relevant factors, including: (1) the reasonable forseeability that the defendant's conduct may injure another; (2) the likelihood of an injury occurring; (3) the magnitude of the burden of guarding against such injury; and (4) the consequences of placing that burden on the defendant. Adams, 211 Ill. 2d at 44. The question before this court is whether a rural landowner may be liable to persons using a public

highway where physical harm resulted from the landowner's failure to maintain trees on the property located near the public highway. Even if we decide that no such duty exists generally, we consider whether a duty arises when the landowner is put on notice that the trees have an actual defect or a potentially dangerous condition. As no case in Illinois is directly on point, this is a case of first impression.

In the absence of Illinois law, we often deem persuasive secondary sources, such as the Restatement (Second) of Torts. See Randall v. Lemke, 311 Ill. App. 3d 848, 851 (2000). Plaintiff urges this court not to follow section 363 in a draconian fashion, while defendant argues that section 363 should apply, because imposing a duty on rural landowners to inspect and maintain trees on their land would be overly burdensome. Defendant further argues that if this court departed from section 363, we would be departing from a traditional rule of law.

We first point out to defendant that section 363 has never been adopted by our supreme court and accordingly is not binding on this court. See In re Marriage of Chrobak, 349 Ill. App. 3d 894, 898 (2004). It may provide this court only with guidance, as may any other secondary source. Chrobak, 349 Ill. App. 3d at 898. The explanatory comments in section 363 provide some rationale for the urban landowner rule. The explanatory comments acknowledge that trees pose threats to public highways and that in an urban area, where traffic is frequent, land is less heavily wooded, and acreage is small, reasonable care for travelers may require the landowner to inspect all trees. Restatement (Second) of Torts §363, Explanatory Notes, Comment e, at 259 (1965). The comments further state that "it will at least require him to take reasonable steps to prevent harm when he is in fact aware of the dangerous condition of the tree." Restatement (Second) of Torts §363, Explanatory Notes, Comment e, at 259 (1965). However, the authors also provided a caveat, stating that "[t]he

Institute expresses no opinion as to whether the rule stated in Subsection (2) may not apply to the possessor of land in a rural area." Restatement (Second) of Torts §363, Explanatory Notes, Caveat, at 258 (1965). Thus, section 363 provides little guidance on our issue of whether the duty imposed on an urban landowner may extend to the rural landowner, and it does not address how notice would affect the duty of a rural landowner.

Both parties cite to Mahurin in support of their opposing positions. In Mahurin, the plaintiff sued his neighbor for failing to prune a tree on her property, after a dead branch fell onto the plaintiff's property and struck the plaintiff. Mahurin, 71 Ill. App. 3d at 691. The plaintiff had warned the defendant that the tree's condition posed a danger. Mahurin, 71 Ill. App. 3d at 691. The defendant moved to dismiss the plaintiff's complaint, alleging that a landowner is not liable to others outside the land for physical harm caused by a natural condition. The defendant also alleged that the plaintiff was contributorily negligent for standing under the tree knowing of its dangerous condition. Mahurin, 71 Ill. App. 3d at 692. The trial court denied the defendant's motion to dismiss and certified the question of whether a landowner in a residential area owed to a person outside his property a duty to remedy some defective or unsound condition of a tree on his land, when the tree and its condition were of a purely natural origin. Mahurin, 71 Ill. App. 3d at 692. In discussing section 363, the appellate court noted that the traditional rule of nonliability developed at a time when land was mostly unsettled and uncultivated. Mahurin, 71 Ill. App. 3d at 692. The court noted that "[w]hile there are many reasons to continue the traditional rule in regions that are largely rural, there is little or no reason to apply it in urban and other developed areas." Mahurin, 71 Ill. App. 3d at 693. For an urban property owner, the burden to inspect a small property is not so great that he should not owe a duty to take reasonable precautions against dangerous natural conditions. Mahurin,

71 Ill. App. 3d at 693. Therefore, the court held that a landowner in a residential or urban area owed to others outside his land a duty to exercise reasonable care to prevent an unreasonable risk of harm arising from defective or unsound trees on the premises, including conditions of purely natural origin. Mahurin, 71 Ill. App. 3d at 693.

The facts of Mahurin are distinguishable from the facts of this case. In Mahurin the land involved was residential whereas here the land in question is rural. In Mahurin the tree posed a danger to a residential neighbor whereas here the trees involved posed a danger to drivers on a main highway. Further, in Mahurin there was one identified tree whereas here there are many trees that line the roadway. Thus, we find Mahurin's application of the urban landowner rule to a residential landowner of little impact to the case at bar.

Defendant also relies on Hammond. In Hammond, 365 Ill. App. 3d at 882, the plaintiff was seriously injured in a motor vehicle accident involving a fallen tree. The plaintiff sued the defendant, contending that the defendant, a utility company, negligently failed to clear the tree from land on which the defendant held an easement. Hammond, 365 Ill. App. 3d at 882. The plaintiff was driving south on Illinois Route 47 in Plato Township when a tree that stood on the southwest corner of the intersection of Route 47 and Bahr Road fell across Route 47 and caused permanent injuries to the plaintiff when his vehicle collided with it. Hammond, 365 Ill. App. 3d at 883. The tree was within 35 to 40 feet of the defendant's utility box that was located on property owned by Elmer Hartje. Hammond, 365 Ill. App. 3d at 883. The court, in determining that the defendant did not owe a duty to the plaintiff, relied on the fact that the defendant's easement provided only that the defendant could operate and maintain utility equipment on the property. Hammond, 365 Ill. App. 3d at 886-87. The tree in question was not interfering with the defendant's equipment, and thus the defendant had

no duty to clear the tree from the property. Hammond, 365 Ill. App. 3d at 888. The plaintiff also argued that the defendant owed a duty to clear the tree, as a possessor of land, pursuant to section 363 of the Restatement (Second) of Torts. Hammond, 365 Ill. App. 3d at 889. The court stated that because the land was rural, neither section 363's exception for urban landowners nor Mahurin's extension to residential landowners applied to its facts. Hammond, 365 Ill. App. 3d at 890.

While Hammond rejected the extension of section 363 to residential landowners, it is unclear whether that issue was fully argued before the court, as the court did not provide much analysis on the issue. Regardless, the case is distinguishable from this case because in Hammond, the actual property owner was not a party to the lawsuit and there was no information regarding whether the property owner had notice of the tree's condition. Thus, we disagree with defendant that Hammond would prohibit us from imposing a duty on a rural landowner.

Other jurisdictions have considered the issue we face today, and we find their analyses persuasive. In Miles v. Christensen, 724 N.E.2d 643, 644-45 (Ind. App. 2000), the defendants owned property abutting the south side of State Road 124. The decedent was riding a motorcycle east on Road 124 when a dead elm tree from the defendants' property fell and killed him. Miles, 724 N.E.2d at 645. The tree had been dead for years and was visible from the perimeter of the property. Miles, 724 N.E.2d at 645. The defendants filed a motion for summary judgment, claiming that they owed no duty of care to the decedent. The trial court denied that motion, and the defendants appealed. In the interlocutory appeal, the appellate court first held that the determination of a landowner's duty did not hinge solely upon the "urban/rural" distinction but involved a more sophisticated analysis of the duty question, requiring consideration of factors such as traffic patterns and land use in the relevant area. Miles, 724 N.E.2d at 646-47, citing Valinet v. Eskew, 574 N.E.2d

283 (Ind. 1991). Whether land could be classified as urban or rural was not the only factor in determining a landowner's duty of care as to natural conditions on the land. Miles, 724 N.E.2d at 646. Second, the court held that public policy considerations favored recognizing that one who owned land, whether urban or rural, may owe a duty of reasonable care as to natural land conditions that threatened outsiders. Miles, 724 N.E.2d at 646. The court observed that motor vehicle travel was common and frequent in modern society and that a significant portion of the public was exposed to dangers posed by natural conditions of property. Miles, 724 N.E.2d at 646. "As such, sound public policy dictates that 'in light of our increasingly mobile society, highways must be kept free from obstructions and hazards.' " Miles, 724 N.E.2d at 646, quoting Fritz v. Parkison, 397 N.W.2d 714, 715 (Iowa 1986). Thus, Indiana promulgated a rule that any landowner may, under certain circumstances, owe a duty of reasonable care as to those who, while outside of the land, suffer harm from the land's natural conditions.

Under its facts, the court found that the defendants owed a duty of reasonable care despite their property being classified as "rural," because the property abutted a main roadway and was not in an area where regular public visitation would be unexpected. Miles, 724 N.E.2d at 647. A breach of that duty was a question of fact, and therefore the denial of the defendants' motion for summary judgment was appropriate. Miles, 724 N.E.2d at 647; see also Valinet, 574 N.E.2d at 285 (holding that whether land is in an area of sufficient population density to invoke a duty of care requires a factual consideration of such factors as land use and traffic patterns and determining that whether a landowner exercised reasonable care will require the fact finder to weigh the seriousness of the danger against the ease of preventing it); May v. George, 910 N.E.2d 818 (Ind. App. 2009) (considering several factors to conclude that the plaintiff failed to establish traffic patterns and land

use that warranted imposing a duty and failed to establish that the defendant had notice of the tree's condition).

Jurisdictions beyond Indiana have similarly employed a traditional negligence analysis rather than the simplistic "urban/rural" distinction found in section 363. See McKee v. Ulrey, No. 3:2007CV00056, slip op. at 5-7 (N.D. W.Va. 2007) (before determining whether the rural landowner had any duty, allowing the plaintiff to conduct discovery on factors such as character of the land, character of the highway upon which the tree fell, exact location of the tree, posture of the tree prior to its fall, frequency with which landowner passed by the tree, and whether landowner had any appreciation of tree's potential danger); Hensley v. Montgomery County, 25 Md. App. 361, 368-69, 334 A.2d 542, 546-47 (1975) (although refusing to extend the urban duty to a rural landowner, the court determined the rural landowner owed no duty by considering the size and type of the road, the use of the road, the amount of traffic on the road, the land use around the road, and whether the defendant had notice of the dangerous tree); Heckert v. Patrick, 15 Ohio St. 3d 402, 405-06, 473 N.E.2d 1204, 1208 (1984) (when determining whether the rural landowner owed a duty of reasonable care, court considered factors such as whether the defendant had any actual or constructive notice of dangerous condition, the location of the highway, its size and type, and the number of travelers on the roadway); Taylor v. Olsen, 282 Or. 343, 348, 578 P.2d 779, 782 (1978) (holding that the question of the landowner's attention to the condition of his roadside trees under a general standard of reasonable care is to be decided as a question of fact and cannot be determined simply by classifying land as either urban or rural).

We agree with the traditional negligence analysis used by Indiana and the various other jurisdictions rather than an analysis based on the overly simplistic "urban/rural" distinction. Given

the increased travel on well-developed highways across our countryside, we do not believe that the law should be applied in such a way that provides relief for a plaintiff traveling on a town road and no relief to a plaintiff traveling on a major highway, simply because the town road is in an area deemed "urban" and the highway is in one deemed "rural." The more reasonable approach is to follow a traditional negligence analysis, which takes into consideration the various factors of each case, such as the size and type of the road, the traffic patterns of the road, the nature of the surrounding land, the condition and location of the tree, the nature of the danger posed to travelers, and the burden of inspecting and removing the danger. Here, the parties should be allowed to proceed with discovery to obtain more information regarding these factors so that the trial court may fully consider whether defendant had a duty to exercise reasonable care in maintaining the trees that abutted Illinois Route 2. Because the case was still at the pleading stage, the trial court (and this court) had no information regarding how many people visited defendant's property, how many motorists used the road in that area, and whether a reasonable inspection would have identified the tree as posing a danger before it fell.[1] Therefore, the trial court erred in finding that the rural distinction was dispositive of plaintiff's case and erred in dismissing plaintiff's complaint without adequate consideration of the relevant factors in determining whether defendant owed a duty to plaintiff.

Even if we determined that a rural landowner generally did not have a duty to exercise reasonable care to prevent an unreasonable risk of harm arising from the condition of his trees on his land near a highway, notice of a dangerous natural condition on his land may give rise to the duty. Here, we find that plaintiff sufficiently pleaded that defendant had actual notice of the dangerous

---

[1]These factors are not exclusive, and the trial court should consider all relevant factors.

condition. Plaintiff alleged in his complaint that defendant was warned by a witness named Gordon Bell that the trees in the area where the accident occurred were damaged and posed a danger to motorists. One tree was particularly precariously perched in a dangerous position. The trial court found that plaintiff's allegation failed to constitute notice because it did not address the specific tree that fell. The trial court also determined that plaintiff did not plead that an inspection would have disclosed that this particular tree posed a hazard. We find that the trial court's concerns are valid in that vague warnings concerning large areas of wooded land would place an onerous burden of inspection on landowners. However, the trial court was ruling only upon a section 2--619 motion, which does not concern the sufficiency of the pleadings but only whether there exists a valid defense that would defeat the plaintiff's complaint as a matter of law. Here, plaintiff certainly pleaded that defendant was warned by Bell about the dangerous condition of the trees near the area where the accident occurred, failed to inspect the trees on his property, failed to prune the trees immediately adjacent to the roadway, failed to inspect trees after being put on notice, and disregarded notice that the trees posed a hazard. When considering a section 2--619 attack, the trial court is to take the plaintiff's allegations as true and in the light most favorable to the plaintiff. Whether the notice provided by Bell was adequate to place defendant on notice that further action was necessary, whether an inspection would have discovered the danger, and whether defendant breached a duty to inspect the trees after receiving notice are questions of fact that the trial court should not have decided at this stage. Thus, at this stage in the proceedings, the trial court erred in finding that plaintiff's allegation of notice was insufficient.

## III. CONCLUSION

Based on the foregoing reasons, we find that the trial court erred in finding the rural classification of defendant's property dispositive of plaintiff's claims and further erred in determining that plaintiff's allegation of notice was insufficient. Accordingly, we reverse the judgment of the circuit court of Ogle County and remand the cause for further proceedings consistent with this opinion.

Reversed and remanded.

HUTCHINSON and BURKE, JJ., concur.