# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *Stackhouse v. Royce Realty & Management Corp.*, 2012 IL App (2d) 110602

---

| | |
|---|---|
| Appellate Court Caption | CATHY STACKHOUSE, Plaintiff-Appellee, v. ROYCE REALTY AND MANAGEMENT CORPORATION, Defendant-Appellant (Lakemoor Country Club, Inc., d/b/a Lakemoor Golf Course, Defendant). |
| District & No. | Second District<br>Docket No. 2-11-0602 |
| Filed | June 4, 2012 |
| Held<br><br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action for the injuries plaintiff suffered when a tree on defendants' property fell and struck her, the verdict finding defendants responsible was affirmed, since under a traditional analysis, defendants had a duty to protect plaintiff from the tree where it was located on a golf course near a cart path used by golfers and pedestrians, defendants knew through an employee that a tree of the same variety had fallen two years earlier because it was "rotten," it was reasonably foreseeable the tree could fall and harm someone, the burden of imposing a duty on defendants to inspect the tree and remove it was not onerous, and based on the evidence that the tree's structural deficiencies caused it to fall, the jury's finding that defendants' breach of their duty to protect plaintiff from the tree was the proximate cause of her injuries was not subject to a judgment *n.o.v.* |
| Decision Under Review | Appeal from the Circuit Court of Lake County, No. 08-L-610; the Hon. Jorge L. Ortiz, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on Appeal     Thomas H. Boswell and Timothy G. Shelton, both of Hinshaw & Culbertson LLP, of Chicago, for appellant.

John A. Kornak, Mark J. Vogg, and Thomas J. Popovich, all of Law Offices of Thomas J. Popovich, P.C., of McHenry, for appellee.

Panel     JUSTICE SCHOSTOK delivered the judgment of the court, with opinion. Justices Bowman and Birkett concurred in the judgment and opinion.

# OPINION

¶ 1     On April 26, 2008, the plaintiff, Cathy Stackhouse, was severely injured when a tree located on the property of the defendant Lakemoor Country Club, Inc. (Lakemoor), fell and struck her. The plaintiff filed a complaint against Lakemoor and its manager, the defendant Royce Realty and Management Corporation (Royce), sounding in negligence. A jury returned a verdict in the plaintiff's favor, finding the defendants equally responsible. Royce filed a motion for a judgment notwithstanding the verdict (*n.o.v.*), which the trial court denied. Royce appeals from that order,[1] arguing that (1) it owed no duty to the plaintiff and (2) its breach of any purported duty was not the proximate cause of the plaintiff's injuries. We affirm.

¶ 2     On July 24, 2008, the plaintiff filed a complaint against the defendants, sounding in negligence. The complaint alleged that, on April 26, 2008, the plaintiff was walking on a path next to the golf course that was owned by Lakemoor and managed by Royce. While she was walking, a tree collapsed and fell on her, causing her severe injuries. The complaint alleged that the defendants were negligent because they (1) improperly maintained the golf course and failed to reasonably inspect it; (2) failed to remove a tree "with a propensity for falling and injuring the Plaintiff and others"; (3) permitted the tree to remain on the golf course property; and (4) failed to warn the plaintiff of the dangerous condition of the tree.

¶ 3     Between September 27 and October 8, 2010, the trial court conducted a jury trial on the plaintiff's complaint. The plaintiff testified that she lived at 190 Windward in Lakemoor, which was adjacent to the Lakemoor Golf Course. She had worked for Royce in 2002 as manager of the golf course pro shop. One of her responsibilities was "keeping an eye out" to make sure that the workers were doing their jobs. While working for Royce she knew Cesar Lopez, who was the golf course superintendent.

¶ 4     On July 10, 2006, she heard a noise outside her home. The next morning she saw that a

---

[1]Lakemoor did not file a notice of appeal.

huge tree had fallen across a golf cart path near the thirteenth tee of the golf course. When she looked at the tree stump, she thought the wood inside the stump looked unusual–like sponge or Styrofoam rather than solid wood. Since the inside of the tree looked so unusual, she took a series of photographs of the tree in anticipation of talking to someone at the golf course about the tree. Shortly after the tree fell, the plaintiff met with Lopez. She told him that she thought the tree was rotten and that maybe he should have it checked out. He told her that he would have "someone check them." She was satisfied with the answer and had no reason not to believe him.

¶ 5        On April 26, 2008, at approximately 5:30 p.m., the plaintiff went behind her house to take her dog for a walk. The weather was windy. As she was walking near the thirteenth tee, a tree limb struck her on her back between her shoulders, throwing her forward, facedown onto the ground. She was subsequently transported to a hospital via helicopter.

¶ 6        Kevin Plencner testified that, since 2004, he had been the vice president of Royce. His duties included supervising Lopez. He expected Lopez to check the trees on the golf course to determine if they were healthy. Plencner would be concerned if a tree fell on the golf course, because it might kill or seriously injure someone. He would want Lopez to investigate why a tree fell, because there was a potential that it might happen with another tree at the same location. Plencner testified that, if Lopez did not have the expertise to determine why a particular tree fell on the golf course, he expected Lopez to hire an arborist to make that determination.

¶ 7        Lopez testified that he was employed by Royce as the golf course superintendent when both the 2006 and the 2008 trees fell. He knew the plaintiff because she had worked at the golf course in 2002. She lived near the thirteenth tee. The backyard of her home was adjacent to the area where the trees fell in 2006 and 2008. He did not recall having a conversation with the plaintiff about the tree that fell in 2006, but it was possible that the conversation took place. He had the tree that fell in 2006 removed. He did not contact an arborist or do anything else to determine why that tree had fallen.

¶ 8        David Boone, a certified arborist, testified that he visited Lakemoor on May 13, 2008, to determine why the limb from the tree at issue had struck the plaintiff. He determined that the 2006 and 2008 trees, which were both cottonwoods, failed because of structural weaknesses due to excessive decay. The cause of the decay was an aggressive fungus called *ganoderma applanatum*. The most common way for *ganoderma applanatum* to be introduced into a tree is via the root system. He determined the cause of the failure of the 2008 tree by using a mallet, a drill, and a measuring device.

¶ 9        Boone stated that the two trees stood approximately three to four feet from one another. If you stood between the trees, you could touch both at the same time. When trees of the same species are close together, it is fairly common for their root systems to join together. Boone believed that the 2006 tree transmitted the *ganoderma* fungus to the 2008 tree, thus causing that tree to fail as well. Boone also noted that the 2008 tree was close to several cart paths. One path was approximately 15 feet from the tree while another path was 27 feet from the tree.

¶ 10       Boone further testified that, had a certified arborist been called to Lakemoor in July 2006

to investigate the 2006 tree failure, the arborist would have noted the fruiting bodies on the trunk of the tree, observed the rot, and determined that the rot was what caused the tree to fail. The arborist would also have looked at the 2008 tree and evaluated it for structural soundness. Had the arborist evaluated the structural soundness of the 2008 tree, he or she would have decided, given the tree's location, the target potential, and the amount of structural decay present at that time, that the tree probably should be removed. Boone explained that the "target potential" meant that the tree would be considered an unreasonable risk because there was a high traffic potential with the proximity of the tee box and the surrounding cart paths. Boone acknowledged that the winds were strong on the day that the tree fell. However, he testified that, due to the diseased condition of the tree, it "could have fallen with no wind at all."

¶ 11 On cross-examination, Boone acknowledged that in reviewing a photograph taken of the tree before April 26, 2008, he could not see the presence of any "fruiting bodies." He could identify no other external evidence of disease; to the contrary, the tree had a healthy canopy of leaves. He testified that a tree can appear to be biologically healthy even when it is structurally unsound. The diseased condition of the tree might have been externally apparent, at best, six months to a year prior to the accident.

¶ 12 Dr. Bruce Allison, who was a professor in forest and wildlife ecology, testified that the only sure way to discover internal disease afflicting a tree before it falls is to employ a structural integrity analysis, using a resistograph, a drill, sound waves, and a mallet. As to the tree at issue, he testified that the tree's decay did not by itself cause the tree to fall. Rather, "extraordinary forces" working together–including heavy wind, an insufficient amount of remaining wood, and the tree's leafy crown–caused the tree to fall.

¶ 13 At the close of the plaintiff's case, the defendants moved for a directed verdict, which the trial court denied. At the close of trial, the jury returned a verdict in the plaintiff's favor and awarded her $4,529,322.34. The defendants made an oral motion for a judgment *n.o.v.*, which the trial court denied. Royce subsequently filed a written motion for a judgment *n.o.v.*, arguing that it owed no legal duty to the plaintiff. The trial court denied Royce's motion. The trial court explained that whether Royce owed the plaintiff a duty should be determined under traditional negligence principles. The trial court found that Royce had a duty to exercise reasonable care on the basis of its knowledge of the existence of a dangerous condition. The trial court additionally found that Royce had voluntarily assumed a duty to check the tree at issue when Lopez told the plaintiff that he would have "someone check them." Further, there was sufficient evidence for the jury to determine that Royce's breach of its voluntarily assumed duty was the proximate cause of the plaintiff's injuries. Following the trial court's ruling, Royce filed a notice of appeal.

¶ 14 At the outset, we consider whether we have jurisdiction of Royce's appeal. The plaintiff argues that we do not, because Royce did not file a notice of appeal within 30 days after the trial court denied the defendants' oral motion for a judgment *n.o.v.* Royce insists that it complied with section 2-1202(b) of the Code of Civil Procedure (the Code) (735 ILCS 5/2-1202 (West 2010)) and timely filed its notice of appeal within 30 days of the denial of its written posttrial motion.

¶ 15    Section 2-1202 of the Code provides in pertinent part:

> "(b) Relief desired after trial in jury cases, heretofore sought by reserved motions for directed verdict or motions for judgment notwithstanding the verdict, in arrest of judgment or for new trial, must be sought in a single post-trial motion. *** The post-trial motion must contain the points relied upon, particularly specifying the grounds in support thereof, and must state the relief desired, as for example, the entry of a judgment, the granting of a new trial or other appropriate relief. ***
>
> (c) Post-trial motions must be filed within 30 days after the entry of judgment or the discharge of the jury, *** or within any further time the court may allow within the 30 days or any extensions thereof." 735 ILCS 5/2-1202 (West 2010).

A posttrial motion pursuant to section 2-1202 must be in writing to be effective. *Zirp-Burnham, LLC v. E. Terrell Associates, Inc.*, 356 Ill. App. 3d 590, 604 (2005). An oral motion is insufficient. *Welch v. Ro-Mark, Inc.*, 79 Ill. App. 3d 652, 656 (1979).

¶ 16    Here, after the jury returned its verdict, the defendants orally requested a judgment *n.o.v.* The trial court denied the request. Royce then subsequently filed a timely written posttrial motion, which the trial court also denied. Royce then filed a notice of appeal within 30 days of the trial court's denial of its written motion. The plaintiff contends that Royce's oral request constituted its posttrial motion for purposes of section 2-1202. In light of *Zirp-Burnham* and *Welch*, the plaintiff's argument is without merit. As Royce filed a notice of appeal within 30 days of the trial court's denial of its written section 2-1202 motion, we have jurisdiction to consider Royce's appeal.

¶ 17    Turning to Royce's arguments on appeal, Royce first contends that the trial court erred in not granting a directed verdict in its favor or granting its motion for a judgment *n.o.v.* because, as a matter of law, it had no duty to protect the plaintiff from a natural condition on the land, such as a falling tree. Alternatively, Royce argues that it owed no duty to the plaintiff under a traditional negligence analysis.

¶ 18    In a negligence action, the plaintiff must provide sufficient facts to show the existence of a duty owed by the defendant, a breach of that duty, and an injury proximately resulting from the breach. *Ziemba v. Mierzwa*, 142 Ill. 2d 42, 45 (1991). Where the plaintiff fails to provide facts from which the court can infer the existence of a duty, judgment for the defendant is appropriate. *Vesey v. Chicago Housing Authority*, 145 Ill. 2d 404, 411 (1991). The existence of a duty is a question of law to be determined by the court. *Bonavia v. Rockford Flotilla 6-1, Inc.*, 348 Ill. App. 3d 286, 291 (2004). Accordingly, our review is *de novo*. *Simpkins v. CSX Transportation, Inc.*, 2012 IL 110662, ¶ 14.

¶ 19    A directed verdict or a judgment *n.o.v.* is appropriate where all of the evidence, viewed in the light most favorable to the nonmoving party, so overwhelmingly favors the moving party that no contrary verdict based on the evidence could stand. *Maple v. Gustafson*, 151 Ill. 2d 445, 453 (1992). In a negligence action, where the plaintiff's evidence fails to establish the existence of a duty, a directed verdict is appropriate. *Gonzalez v. Kennedy Mobil Service, Inc.*, 274 Ill. App. 3d 1077, 1083 (1995).

¶ 20    In arguing that it had no duty to protect the plaintiff from a natural condition on the property at issue, Royce relies on *Burns v. Addison Golf Club, Inc.*, 161 Ill. App. 3d 127

(1987). In *Burns*, the plaintiff was injured when she tripped over an exposed tree root on the defendant's golf course. The trial court granted summary judgment for the defendant. The trial court found "that defendant had not breached its duty of care to plaintiff, as the exposed tree root was a natural condition which did not constitute a legal defect or hazard that could support a cause of action for negligence." *Id.* at 129. This court affirmed. We explained that, under the circumstances of the case, the plaintiff was required to show that she was injured as a result of an unnatural condition of the defendant's premises. *Id.* at 130. Relying on *Warchol v. City of Chicago*, 75 Ill. App. 3d 289, 297 (1979), we noted that, where a tree and its roots did not of themselves create an unreasonable risk of harm and the defendant did nothing to maintain the tree and roots so as to create an unreasonable risk of harm, the defendant owed no duty to the plaintiff, who was injured when she fell against the tree. *Burns*, 161 Ill. App. 3d at 130. We then expounded that the case was "akin to those where a person slips on ice, snow, or water." *Id.* In those cases, the "law is well settled in Illinois that no liability is incurred for injuries resulting from a fall on snow or ice which has accumulated as a consequence of natural causes where the accumulation or condition is not aggravated by the owner of the premises." *Id.* Finally, in so ruling, we declined the plaintiff's request to reject the common-law distinctions between natural and artificial conditions and adopt ordinary negligence principles to determine a possessor's liability. *Id.* at 131.

¶ 21        Although this court declined to address a possessor's potential liability regarding a natural condition under ordinary negligence principles, we note that many other Illinois courts have. In *Mahurin v. Lockhart*, 71 Ill. App. 3d 691 (1979), the plaintiff was injured when a branch fell from a tree growing on an adjoining property. The reviewing court noted that the "traditional rule" is that a landowner has no duty to persons outside the property to prevent injuries caused by natural conditions. *Id.* at 692 (citing Restatement (Second) of Torts § 363 (1965)). The only exception to the traditional rule, as stated in the Restatement (Second) of Torts, is that a landowner in an urban area has a duty to exercise reasonable care to prevent an unreasonable risk of harm to passing motorists from the condition of trees on the premises. *Id.* The reviewing court expanded the scope of liability, holding that "a landowner in a residential or urban area has a duty to others outside of his land to exercise reasonable care to prevent an unreasonable risk of harm arising from defective or unsound trees on the premises, including trees of purely natural origin." *Id.* at 693.

¶ 22        In *Chandler v. Larson*, 148 Ill. App. 3d 1032 (1986), the reviewing court held that the plaintiff stated a cause of action for negligence against an adjoining residential lot's owner whose tree had grown roots that entered the plaintiff's yard and damaged the plaintiff's garage. The reviewing court explained that the plaintiff sufficiently alleged that the defendant had notice that the roots from the defendant's tree were damaging the plaintiff's garage yet the defendant "refuse[d] to uproot the tree or use other methods which would prevent further harm and injury to plaintiff's garage." *Id.* at 1038.

¶ 23        In *Eckburg v. Presbytery of Blackhawk of the Presbyterian Church (USA)*, 396 Ill. App. 3d 164 (2009), a large portion of a tree located on the defendant's property fell across the road as the plaintiff and his wife were riding past on a motorcycle. The plaintiff was severely injured and his wife was killed. The trial court dismissed the complaint, on the ground that the landowner did not owe a duty to the plaintiff with respect to the tree because the property

was rural. *Id.* at 168. After reviewing both Illinois and foreign authorities, this court reversed and concluded that a "traditional negligence analysis," rather than "the overly simplistic 'urban/rural' distinction," was the appropriate means to determine whether the landowner owed a duty to the plaintiff. *Id*. at 173 (citing *Miles v. Christensen*, 724 N.E.2d 643, 646 (Ind. Ct. App. 2000) (holding that public policy considerations favor recognizing that one who owns land, whether urban or rural, might owe a duty of reasonable care as to natural land conditions that threaten outsiders)). This court further stated that the traditional negligence analysis "takes into consideration the various factors of each case, such as the size and type of the road, the traffic patterns of the road, the nature of the surrounding land, the condition and location of the tree, the nature of the danger posed to travelers, and the burden of inspecting and removing the danger." *Id.* at 173-74.

¶ 24    In *Eckburg*, we also reversed the trial court's finding that the plaintiff's complaint did not adequately allege that the defendant had actual notice of the potential for harm. In his complaint, the plaintiff alleged that the defendant had actual notice that trees on the defendant's property were in defective and unsound condition and posed a threat of falling onto the roadway. *Id.* at 165. Specifically, the complaint alleged that one week prior to the plaintiff's accident a person named Gordon Bell called the defendant to complain about a " 'precariously perched' " tree along the roadway. *Id.* We held that "[w]hether the notice provided by Bell was adequate to place defendant on notice that further action was necessary, whether an inspection would have discovered the danger, and whether defendant breached a duty to inspect the trees after receiving notice are questions of fact that the trial court should not have decided at this stage." *Id.* at 175.

¶ 25    In *Ortiz v. Jesus People, U.S.A.*, 405 Ill. App. 3d 967 (2010), the plaintiff was bicycling on a public sidewalk in the City of Chicago when she was struck by a limb falling from a tree on the defendant's property. The defendant appealed the jury verdict in favor of the plaintiff. On appeal, the defendant argued that it had no actual or constructive knowledge that the tree was unsound. *Id.* at 974. The defendant also argued that knowledge that might have been available to an expert could not serve as constructive notice on the part of a landowner. *Id.*

¶ 26    The *Ortiz* court held that, "under Illinois law, an urban landowner owes a duty of reasonable care that includes taking reasonable steps to prevent injury." *Id.* at 975. The *Ortiz* court explained:

> "Aside from the fact that the property was located in Chicago, an urban area, the tree was, by defendant's own admission, one of only four in defendant's garden and, as such, obviates any need for a balancing of the burden of inspection and removal of the danger with the potential for harm. [Citation.] Most importantly, the tree was adjacent to a public sidewalk on a busy public street and a very large limb extended over that sidewalk. Thus, reasonable care would involve inspection of and maintenance of the tree to prevent an injury to travelers of the public sidewalk." *Id.*

The *Ortiz* court further stated that the question of duty in the case depended on the traditional negligence analysis, *i.e.*, "the court must weigh the reasonable foreseeability of the injury, the reasonable likelihood of the injury, the magnitude of the burden of guarding against it, and the consequences of placing the burden on the defendant." *Id.* The *Ortiz* court held that

the defendant had a duty under the circumstances and rejected the defendant's claim that there could be no duty without proof of any visible defect in the tree. The *Ortiz* court agreed with the trial court's observation "that it would have been easy to obtain information about the condition of the tree and, considering defendant's years of ownership of the property and the tree, the size of the limb, and the fact that it was over the public walkway, 'it was incumbent upon [defendant] to find out and to take appropriate action.' " *Id.*

¶ 27    In *Belton v. Forest Preserve District*, 407 Ill. App. 3d 409 (2011), the plaintiff sought damages for injuries he sustained when a large dead tree limb fell and struck his car as he drove past the property of the defendant forest preserve district. The trial court dismissed the plaintiff's complaint, but the reviewing court reversed. *Id.* at 427. The reviewing court analyzed the plaintiff's complaint pursuant to a "traditional negligence analysis." *Id.* at 423. The reviewing court found that the record lacked an "adequate factual basis for resolving the duty question" and, accordingly, the court remanded the case instead of ruling on the question of whether the forest preserve district had a duty to "exercise reasonable care in maintaining the trees" along the road where the plaintiff was injured. *Id.* at 424.

¶ 28    We find the analysis in *Mahurin*, *Chandler*, *Eckburg*, *Ortiz*, and *Belton* persuasive, as those courts looked beyond arbitrary distinctions, such as whether the plaintiff was harmed in an urban or rural setting, and instead looked to various relevant factors to determine whether the defendant's conduct was reasonable under the circumstances. As we explained in *Eckburg*, it is not fair "that the law should be applied in such a way that provides relief for a plaintiff traveling on a town road and no relief to a plaintiff traveling on a major highway, simply because the town road is in an area deemed 'urban' and the highway is in one deemed 'rural.' " *Eckburg*, 396 Ill. App. 3d at 173. Similarly, we do not believe that the law should be applied in such a way that provides relief for a plaintiff who was injured due to an artificial condition of a tree on the defendant's land rather than a natural condition, regardless of whether the defendant had knowledge of that dangerous condition. In so ruling, we depart from that part of the analysis in *Burns* that held to the contrary.

¶ 29    We also find that *Burns* is factually distinguishable from the instant case because the danger in *Burns*–exposed tree roots–was open and obvious. Indeed, in determining that the defendant landowner did not owe the plaintiff any duty, the *Burns* court relied on several cases that involved open and obvious dangers. *Burns*, 161 Ill. App. 3d at 130 (citing *Warchol*, 75 Ill. App. 3d at 297 (involving exposed tree roots), *Lohan v. Walgreens Co.*, 140 Ill. App. 3d 171, 173 (1986) (natural accumulation of snow and ice), and *Bakeman v. Sears, Roebuck & Co.*, 16 Ill. App. 3d 1065, 1068 (1974) (same)). The *Burns* court further specifically distinguished the issue therein from those cases that involved hidden dangers. *Id.* at 131. Here, at issue was the hidden danger of a rotten tree. Accordingly, as we depart from the *Burns* court's use of natural/artificial distinctions as well as find that *Burns* is factually distinguishable, we therefore reject Royce's argument that our holding in *Burns* governs this appeal.

¶ 30    We next turn to the issue of whether Royce owed a duty to the plaintiff under a traditional analysis. In *Krywin v. Chicago Transit Authority*, 238 Ill. 2d 215, 226 (2010), our supreme court explained:

"The touchstone of the duty analysis is to ask whether the plaintiff and defendant stood in such a relationship to one another that the law imposes on the defendant an obligation of reasonable conduct for the benefit of the plaintiff. The inquiry involves four factors: (1) the reasonable foreseeability of the injury; (2) the likelihood of the injury; (3) the magnitude of the burden of guarding against the injury; and (4) the consequences of placing the burden on the defendant."

Even if a landowner (or manager of land) would not generally owe a duty of reasonable care to another due to a dangerous condition on his land, he might nonetheless owe a duty of care if he has knowledge of the condition on his land. *Eckburg*, 396 Ill. App. 3d at 169. Duty based on knowledge of a dangerous condition is not limited to actual knowledge, but may include constructive knowledge as well. *Adams v. Northern Illinois Gas Co.*, 211 Ill. 2d 32, 49 (2004). One will be considered to have constructive knowledge if he receives facts that would make the dangerous condition known to any ordinary prudent person. *Id.*

¶ 31    We believe that the danger of a tree falling on a golf course and hitting a person due to a naturally occurring fungus is not the type of event that occurs so frequently that, in general, it could have been reasonably foreseen. However, the tree that fell on the plaintiff in this case was not just any tree. The tree was a large cottonwood in close proximity (falling distance) to a cart path frequently used by golfers and pedestrians who were intended and permitted users of both the cart path and the land adjoining the golf course. Most importantly, Royce, through its golf course superintendent Lopez, knew in 2006 that another large cottonwood tree just a few feet away fell over because it was "rotten." Based on this information, a reasonable person in Lopez's position should have known that the tree at issue in this case was also possibly rotten, or diseased, and therefore posed the danger of falling. This was because, as Boone testified, the root systems of large cottonwood trees that are close together commonly join together and, if one tree is diseased, it can easily pass the disease to the other tree via the combined root system. Plencner, Royce's vice president and Lopez's supervisor, corroborated Boone's testimony when he acknowledged that he would have wanted Lopez to investigate why the 2006 tree fell, because there was a potential that it might happen with another tree at the same location. Accordingly, based on this evidence, we hold that it was reasonably foreseeable that a large tree that was possibly diseased and near a path people used could fall and harm someone. Further, as an obligation on Royce to inspect that one tree and remove it if it was rotten was not an onerous burden, we hold that Royce owed a duty to the plaintiff to inspect the tree and remove it if it was rotten. See *Krywin*, 238 Ill. 2d at 226.

¶ 32    We additionally note that although the tree at issue did not fall until almost two years after Royce had constructive knowledge that the tree was possibly diseased, the passage of time did not extinguish this initial duty. *Kavales v. City of Berwyn*, 305 Ill. App. 3d 536, 546 (1999). The fact that an alleged injury occurred many years after an alleged breach of a duty, while it could ultimately present proof problems with respect to elements of the plaintiff's cause of action, does not change the fact of the existence of the duty. *Id.* Thus, the fact that the tree did not fall until 2008 did not discharge Royce of its duty to inspect the tree in 2006.

¶ 33    As Royce did not inspect the tree at issue, we next consider whether the breach of that duty was the proximate cause of the plaintiff's injuries. Royce argues that, even if the tree

that fell in 2008 had been inspected in 2006, its diseased condition "was not likely to have been discovered." Further, Royce insists that the type of periodic inspections proposed by the experts at trial would not have ensured the identification of the diseased tree.

¶ 34 As stated above, a judgment *n.o.v.* is appropriate only where all of the evidence so overwhelmingly favors the moving party that no contrary verdict based on the evidence could stand. *Maple*, 151 Ill. 2d at 453. The court has no right to enter a judgment *n.o.v.* if there is any evidence, together with reasonable inferences to be drawn therefrom, demonstrating a substantial factual dispute, or if the assessment of the credibility of the witnesses or the determination regarding conflicting evidence is decisive to the outcome. *Id.* at 454. Proximate cause is a question for the trier of fact. *First Springfield Bank & Trust v. Galman*, 188 Ill. 2d 252, 257 (1999).

¶ 35 Here, Boone testified that, had a qualified arborist been called to the golf course in July 2006, an investigation of the downed tree would have prompted an investigation of the 2008 tree. The 2008 tree would have been evaluated for structural integrity. The evaluation would have found a significant amount of decay. Given the location of the tree, the target potential, and the amount of structural decay, the tree would probably have been removed. Boone testified that an arborist would have recommended removal of the tree in the spring of both 2007 and 2008, for the same reasons. Boone also testified that the mature *ganoderma applanatum* present at the base of the tree would have been visible for at least a year before the tree failed.

¶ 36 Royce points to parts of Boone's testimony that suggest that, because the tree's disease was so fast moving, Royce could not have known that the tree was diseased even if it had done regular inspections. However, we believe that, considering the totality of Boone's testimony, the jury could reasonably conclude that, had Royce inspected the tree when it learned of the adjacent diseased tree in 2006, the tree would have been removed prior to April 26, 2008, when it fell.

¶ 37 Royce further argues that the evidence established that the tree's condition was not the sole proximate cause of its falling. Royce points to Dr. Allison's testimony that decay alone did not cause the tree to fall. Rather, he testified that "extraordinary forces" working together–heavy wind, an insufficient amount of remaining wood, and the tree's leafy crown–caused the tree to fall. However, " '[a]n injury may have more than one proximate cause.' " *Richter v. Village of Oak Brook*, 2011 IL App (2d) 100114, ¶ 21 (quoting *Smith v. Armor Plus Co.*, 248 Ill. App. 3d 831, 840 (1993)). In any event, Boone testified that, due to the structural weakness of the tree, it "could have fallen with no wind at all." Again, it was for the jury to resolve the conflicts in the evidence. As there was evidence that the tree's structural deficiencies alone were the reason why it fell, the jury's determination that Royce's breach of its duty to protect the plaintiff from the tree was the proximate cause of the plaintiff's injuries was not subject to a judgment *n.o.v.*

¶ 38 For the foregoing reasons, the judgment of the circuit court of Lake County is affirmed.

¶ 39 Affirmed.