FOURTH DIVISION

No. 1-09-3255

| | | |
|---|---|---|
| MARIA ORTIZ, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County |
| | ) | |
| v. | ) | |
| | ) | |
| JESUS PEOPLE, U.S.A., a Not-For-Profit Corporation, | ) | Honorable |
| d/b/a The Friendly Towers, | ) | Thomas Chiola, |
| | ) | Judge Presiding. |
| Defendant-Appellant | ) | |
| | ) | |
| (The City Of Chicago, a Municipal Corporation, | ) | |
| | ) | |
| Defendant-Appellee). | ) | |

JUSTICE O'MARA FROSSARD delivered the opinion of the court:

Defendant Jesus People, U.S.A., a not-for-profit corporation, d/b/a The Friendly Towers (Jesus People), in this personal injury action appeals from a jury verdict in favor of plaintiff Maria Ortiz. On appeal, defendant contends the circuit court improperly denied its motions for judgment *n.o.v.*, a new trial, and reconsideration of an earlier grant of summary judgment in favor of defendant City of Chicago, a municipal corporation (the City), in defendant's claim for contribution. We affirm.

BACKGROUND

In the instant case, plaintiff was hit and injured by a falling tree limb. The tree was located on defendant's property and the limb, which extended over the public sidewalk, measured more

than 19 feet and was estimated to be up to 14 inches in diameter.

Defendant had owned the property at 920 West Wilson Avenue in Chicago, which is a large lot with a 10-story building used for low income senior housing and other ministries, for almost 20 years. At the time of the incident, there were four trees in the garden, which was separated from the sidewalk by a 6½-foot-tall brick wall. The tree at issue, a Siberian elm, was adjacent to the wall on the inside and it had a large limb that extended out over the wall above the public sidewalk. The tree was there when defendant bought the property, and it, like the rest of the garden, was maintained by Jesus People member Ted Jindrich, who occasionally trimmed low-hanging branches.

On May 11, 2003, plaintiff, her husband Flavio Cali, Sr., and two of their children were riding their bicycles on Wilson Avenue. Plaintiff and her daughter Ruby Cali rode ahead of her husband and son Flavio Cali, Jr., and stopped briefly on the sidewalk at 920 West Wilson to wait for them. It was a very windy day. While plaintiff and Ruby stood on the sidewalk, a large limb fell from the Siberian elm, knocking the two of them to the ground. Ruby did not see the tree strike plaintiff and plaintiff herself remembered seeing something shadow-like coming toward her, then she lost consciousness. Ruby was only slightly injured and she told Flavio, Jr., that their mother was hurt. Plaintiff's husband arrived on the scene and went to the hospital with plaintiff, who had regained consciousness.

A member of the Jesus People, Tom Cameron, saw the tree limb fall after an extraordinarily strong gust of wind. One of the responding police officers, Chicago police sergeant Thomas Banich, said that when he arrived at the scene, it was windy to the point of being

"violent," and all the trees were blowing. The limb of the Siberian elm tree had fallen on an overhead wire and caused the light pole to snap and fall also. Photographic evidence shows that the fallen limb blocked the entire pedestrian section of the sidewalk and extended into the street; the record reflects that the limb measured more than 19 feet and was estimated to be up to 14 inches in diameter.

Plaintiff's injuries required several surgeries; after a second surgery, her mouth was wired shut for six weeks. Almost a year later, plaintiff required two more corrective surgeries, one of which involved taking pieces of her rib to reconstruct her nose.

In April 2005, plaintiff and the two children filed a complaint against defendant and the City for premises liability and negligence. The children claimed emotional distress. Defendant subsequently filed a counterclaim against the City, which later moved for summary judgment.

In January 2006, the court granted the City's motion, holding that the City had no duty as to a tree located on defendant's property.

The matter proceeded to a jury trial that was held over the course of several days in September 2009. At trial, plaintiff, her husband, her son Flavio, Jr., and her daughter Ruby testified about the incident. In addition to several other individuals who testified, including Jindrich, and witnesses to the fallen tree limb, three experts testified about the characteristics of the tree at issue: Charles Schiek for plaintiff, Harold Hoover for defendant, and John Lough, an employee of the City who was not hired by either party.

The evidence established that the tree was a Siberian elm, a species considered undesirable in urban environments because it was brittle and posed a hazard of falling branches. This

particular tree had "codominant stems," meaning that it had two main trunks that split at a narrow angle, rather than a single main trunk. The narrow angle at which the trunks met created a structural weakness in the tree; one aspect of this was the "included bark" that developed, making the joint between the trunks too weak to support their weight. Defendant did not hire professionals to inspect or maintain the tree, although it did its own maintenance by trimming low-hanging branches over the public sidewalk.

Before closing argument, the court granted defendant's motion for directed verdict on the children's claims. On September 25, 2009, after the jury returned a verdict in favor of plaintiff, the court entered judgment and awarded plaintiff $686,831.17.

Defendant filed a posttrial motion seeking judgment *n.o.v.* or a new trial, and also reconsideration of the summary judgment granted in favor of the City. On November 10, 2009, the court entered an order denying defendant's motion.

Defendant timely filed its appeal from the November 10, 2009, postjudgment order; the September 25, 2009, judgment order (referred to in defendant's notice of appeal as the "judgment order entered on September 21, 2009"); the September 25, 2009, jury verdict (also referred to in the notice of appeal as dated from September 21, 2009); the January 23, 2006, order granting summary judgment for the City, and from all prior and collateral rulings, findings, and orders in this matter.

## ANALYSIS

Defendant contends the court improperly denied its posttrial motion for both judgment *n.o.v.* and for a new trial.

Initially, we note that the standards that are used to determine whether a judgment *n.o.v.* should be granted differ from those used in determining whether to grant a new trial. McClure v. Owens Corning Fiberglas Corp., 188 Ill. 2d 102, 131-32 (1999); Maple v. Gustafson, 151 Ill. 2d 445, 453 (1992). The standard for a judgment *n.o.v.* is the higher of the two (Gaffney v. City of Chicago, 302 Ill. App. 3d 41, 59-60 (1998)): a motion for a judgment *n.o.v.*, as compared to a motion for a new trial, requires that a "more nearly conclusive evidentiary situation" be presented before a judgment *n.o.v.* can be entered than is required to justify a new trial (Pedrick v. Peoria & Eastern R.R. Co.. 37 Ill. 2d 494, 509-10 (1967); see also Maple, 151 Ill. 2d at 453-54).

A judgment *n.o.v.* is proper only where " 'all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors the movant that no contrary verdict based on that evidence could ever stand.' " Maple, 151 Ill. 2d at 453, quoting Pedrick, 37 Ill. 2d at 510. In considering a motion for a judgment *n.o.v.*, a court is not concerned with the credibility of witnesses, nor does it weigh the evidence. Maple, 151 Ill. 2d at 453. It may only consider the evidence, and inferences therefrom, in the light most favorable to the party opposing the motion. Maple, 151 Ill. 2d at 453.

With such consideration, then, the motion presents a question of law as to whether there is a total failure or lack of evidence to prove any necessary element of the plaintiff's case. York v. Rush-Presbyterian-St. Luke's Medical Center, 222 Ill. 2d 147, 178 (2006). However, if reasonable minds might differ as to inferences or conclusions to be drawn from the facts presented, the entry of judgment *n.o.v.* is not appropriate. York, 222 Ill. 2d at 178. Decisions on motions for judgment *n.o.v.* are reviewed *de novo*. McClure, 188 Ill. 2d at 132.

1-09-3255

In an action for negligence, the plaintiff must allege facts sufficient to show the existence of a duty, a breach of that duty, and injury to the plaintiff that is proximately caused by that breach. Adams v. Northern Illinois Gas Co., 211 Ill. 2d 32, 43 (2004); Gouge v. Central Illinois Public Service Co., 144 Ill. 2d 535, 542 (1991). The existence of a duty is a question of law to be determined by the court. Gouge, 144 Ill. 2d at 542.

To determine the existence of a duty in a particular case, the court must weigh the reasonable foreseeability of the injury, the reasonable likelihood of the injury, the magnitude of the burden of guarding against it, and the consequences of placing that burden on the defendant. Gouge, 144 Ill. 2d at 542; Polak v. Person, 232 Ill. App. 3d 505, 510 (1992). Although the foreseeability of the injury is an important factor in deciding whether a duty exists, it is not solely determinative of that question. Hutchings v. Bauer, 149 Ill. 2d 568, 571 (1992); Polak, 232 Ill. App. 3d at 511-12. Rather, the foreseeability of harm must be balanced against the burdens and consequences resulting from the recognition of a duty. Hutchings, 149 Ill. 2d at 571.

Here, defendant first contends that its motion for judgment *n.o.v.* should have been granted because, it asserts, it owes a general duty "only to exercise reasonable care to prevent an unreasonable risk of harm arising from a defective or unsound tree." It claims that its Siberian elm tree was not defective or unsound "simply because professionals considered its species problematic and undesirable." Defendant further asserts that it had neither actual nor constructive notice as a condition precedent for liability and that constructive notice could not be established by expert knowledge of defects alone, but only by what would be recognizable to a layperson.

The general rule set forth in section 363 (natural conditions) of the Restatement (Second) of Torts provides that "a possessor of land *** is [not] liable for physical harm caused to others outside of the land by a natural condition of the land." Restatement (Second) of Torts §363(1), at 258 (1965). The "natural condition of the land" includes "the natural growth of trees *** and other vegetation upon land not artificially made receptive to them." Restatement (Second) of Torts §363, Comment *b*, at 258 (1965). However, there is an exception to the general rule of nonliability that pertains to a possessor of land "in an urban area" where such possessor is "subject to liability to persons using a public highway for physical harm resulting from his failure to exercise reasonable care to prevent an unreasonable risk of harm arising from the condition of trees on the land near the highway." Restatement (Second) of Torts §363(2), at 258 (1965).

Contrary to defendant's assertion that this case presents an issue of first impression, our courts have previously considered duties owed by urban landowners specifically regarding trees on their property. In Mahurin v. Lockhart, the court expanded the section 363(2) Restatement (Second) duty, holding: "a landowner in a residential or urban area has a duty to others outside of his land to exercise reasonable care to prevent an unreasonable risk of harm arising from defective or unsound trees on the premises, including trees of purely natural origin." Mahurin v. Lockhart, 71 Ill. App. 3d 691, 693 (1979).

In subsequent decisions, the courts have noted the general trend "to place greater responsibility upon the owner of the property where the tree is located." Chandler v. Larson, 148 Ill. App. 3d 1032, 1037 (1986). In Chandler, the roots from the defendant urban landowner's tree caused damage to a neighbor's garage, leading the court to consider, at length, the duties for

urban landowners in distinction of the general rule of nonliability:

> " 'It is scarcely suited to cities, to say that a landowner may escape
> all liability for serious damage to his neighbors, merely by allowing
> nature to take its course. *** [W]hen the tree is in an urban area,
> *** the landowner now has a duty of reasonable care, including
> inspection to make sure that the tree is safe.' " Chandler, 148 Ill.
> App. 3d at 1037, quoting *N. Keeton, Prosser & Roman on Torts*
> §57, at 391 (5th ed. 1984)).

The court ultimately concluded that the defendant owed an adjoining landowner a duty of reasonable care that "would necessarily include the taking of reasonable steps to prevent damage" to the neighbor's garage caused by the roots of one of the defendant's trees. Chandler, 148 Ill. App. 3d at 1038.

More recently, although in a case involving injury from a fallen tree on a rural highway, the court again considered the rationale for the urban landowner rule. Eckburg v. Presbytery of Blackhawk of the Presbyterian Church, 396 Ill. App. 3d 164, 169-70 (2009). The court examined the explanatory comments for section 363 of the Restatement (Second) of Torts, which acknowledge that trees pose threats to public highways and that "in an urban area, where traffic is frequent, land is less heavily wooded, and acreage is small, reasonable care for travelers may require the landowner to inspect all trees." Eckburg, 396 Ill. App. 3d at 170. There, the case had been dismissed before numerous questions of fact could be determined, but the allegations that the defendant was warned of the danger and failed to inspect or prune the trees after being placed on

notice were found sufficient to withstand dismissal. Eckburg, 396 Ill. App. 3d at 174-75. In reaching this conclusion, the reviewing court rejected an urban-rural distinction of duties in favor of an approach employing a traditional negligence analysis that would take into consideration various factors specific to the location and the incident, including the condition of the tree and the burden of inspecting and removing the danger. Eckburg, 396 Ill. App. 3d at 173-74.

Of defendant's various contentions disclaiming a duty, its central point is the one concerning notice. Defendant asserts that it had neither actual nor constructive notice and that expert knowledge alone could not establish constructive notice, which could only be established by what would be recognizable to a layperson. Since it remedied the only "known" unsound condition of the tree by pruning low-hanging branches, and since there was no other "unsound condition" that was "readily observable," defendant contends it owed no duty.

However, defendant relies on case law from other jurisdictions in support of its claims about lack of notice, attempting to distinguish Illinois case law as pertinent only to the pleading stage. Defendant asserts this case presents a unique issue because it involves the question of duty in relation to evidentiary showings made at trial. In support of this position, defendant claims it found no case in any jurisdiction where the size of a tree limb alone was held to convey constructive notice to the landowner of a dangerous condition. This, like other points raised by defendant, is unavailing, as is defendant's reliance on foreign law.

Contrary to defendant's claims of lack of notice of a defect or of a defect established only by expert testimony, defendant admits that a large limb of the Siberian elm tree hung over the public sidewalk. Resorting to foreign law is not necessary because under Illinois law, an urban

landowner owes a duty of reasonable care that includes taking reasonable steps to prevent injury. See Chandler, 148 Ill. App. 3d at 1038. Aside from the fact that the property was located in Chicago, an urban area, the tree was, by defendant's own admission, one of only four in defendant's garden and, as such, obviates any need for a balancing of the burden of inspection and removal of the danger with the potential for harm. See Eckburg, 396 Ill. App. 3d at 173-74. Most importantly, the tree was adjacent to a public sidewalk on a busy public street and a very large limb extended over that sidewalk. Thus, reasonable care would involve inspection of and maintenance of the tree to prevent an injury to travelers on the public sidewalk. See Eckburg, 396 Ill. App. 3d at 170; Chandler, 148 Ill. App. 3d at 1038.

Defendant asserts that it provided reasonable care by trimming the low-hanging branches. Further, it relies heavily on the fact that its personnel did not see any visible defect to support its claim that it was not on notice and, therefore, owed no duty. As previously noted, to determine the existence of a duty in a particular case, the court must weigh the reasonable foreseeability of the injury, the reasonable likelihood of the injury, the magnitude of the burden of guarding against it, and the consequences of placing that burden on the defendant. Gouge, 144 Ill. 2d at 542. As the court recognized at the posttrial hearing, in assessing the duty of a property owner with a tree "hanging out over a public walkway," the jurors were "very pragmatic." Moreover, consistent with the verdict, the record reflects, as noted by the court, that it would have been easy to obtain information about the condition of the tree and, considering defendant's years of ownership of the property and the tree, the size of the limb, and the fact that it was over the public walkway, "it was incumbent upon [defendant] to find out and to take appropriate action."

The jury's determination that defendant's inaction constituted a breach of its duty and its verdict in favor of plaintiff does not present a "nearly conclusive evidentiary situation" required for granting a motion for judgment *n.o.v.* See Maple, 151 Ill. 2d at 453-54. Here, we cannot say that the record reflects a total failure or lack of evidence to prove any necessary element of plaintiff's action. See York, 222 Ill. 2d at 178. Accordingly, the denial of defendant's motion for judgment *n.o.v.* was proper.

Defendant next contends the court improperly denied its motion for a new trial. In conjunction with this, defendant asserts that: the jury "effectively held [it] strictly liable" because professionals disfavor the species; it was held liable for a tree that was patently healthy but had latent conditions that a nonprofessional would not recognize; and it was denied a fair trial by plaintiff's use of experts, whose professional knowledge was allegedly "substituted" for a layperson's, and who allegedly testified about "extravagant" preventive measures that were irrelevant without notice. Defendant also claims additional errors denied it a fair trial.

A new trial is proper if, after weighing all the evidence, the circuit court determines that the verdict is contrary to the manifest weight of the evidence. McClure, 188 Ill. 2d at 132. A verdict is contrary to the manifest weight of the evidence where the opposite conclusion is clearly evident or where the findings of the jury are unreasonable, arbitrary and not based upon any of the evidence. Maple, 151 Ill. 2d at 454. The standard of review for granting a new trial is deferential to the lower court. Boll v. Chicago Park District, 249 Ill. App. 3d 952, 958 (1991). A reviewing court will not reverse the lower court's decision as to a new trial unless it finds an affirmative showing that the lower court abused its discretion. McClure, 188 Ill. 2d at 132-33; Maple, 151

1-09-3255

Ill. 2d at 455. That is, a clear showing of an opposite conclusion is required to disturb a jury's verdict where the evidence is conflicting. Boll, 249 Ill. App. 3d at 958. In making such determination, the reviewing court considers whether the jury's verdict is supported by the evidence and whether the losing party was denied a fair trial. Maple, 151 Ill. 2d at 455.

In the instant case, the record establishes that the jury's verdict was not contrary to the manifest weight of the evidence, nor was the opposite conclusion clearly evident or the jury's verdict unreasonable or arbitrary. Rather, the evidence presented at trial established that defendant failed to take reasonable measures to prevent harm from the very large overhanging tree limb to travelers on the public sidewalk. Thus, the verdict finding defendant liable for negligence was supported by the evidence. Contrary to defendant's contentions about strict liability and professional knowledge of experts, there was no abuse of discretion in the denial of a new trial. See McClure, 188 Ill. 2d at 132-33.

None of the additional errors claimed by defendant change this conclusion. Of those, defendant first asserts that the court's failure to bar the children's claims for negligent infliction of emotional distress, which were dismissed before closing arguments, amounted to an unfair trial. Defendant argues there was no corrective instruction once the children's claims were dismissed and asserts that the children's presence "at the party table as full co-plaintiffs" resulted in an increased amount in the jury's award for pain and suffering. This is mere speculation. While defendant complains that there was no corrective instruction, the portion of the record it cites, the instructions conference, shows that it did not request such instruction. The cited instructions conference shows that defendant referred to its objection on the record, which was to the

-12-

1-09-3255

children's emotional distress claims. Again, those claims were dismissed. Once the court determined that the children were not within the zone of danger and dismissed the claims, no request for a corrective instruction was made by defendant. Thus, the record does not reflect that either the dismissal of the children's claims or their participation in the trial resulted in unfairness to defendant.

Next, defendant claims the court's permission for plaintiff to use a family acquaintance as interpreter for Flavio Cali, Sr., at trial resulted in unfairness because the court was aware of the "potential for irregularity" with such interpreter. However, defendant does not claim that there actually was such irregularity or mistranslation but, rather, indicates that it could not know whether the interpreter was skillful and precise. Further, Flavio, Sr., was a minor witness who was not present at the scene when the tree limb struck plaintiff. His testimony largely concerned his actions after the fact, waiting for the ambulance and accompanying plaintiff to the hospital, and the extent of plaintiff's injuries. Therefore, in this instance, the record does not reflect that the asserted error of plaintiff's use of an acquaintance as interpreter resulted in an unfair trial.

Defendant next claims the trial was unfair because the court refused to allow it to present a news video at trial that purportedly depicted the windy conditions on the day of the incident. The record reveals that defendant failed to "discover" this news video during the five years since the case had been filed, or tender it during discovery, but sought to, in the court's words, "dump[]" it on plaintiff on the eve of trial. The denial of defendant's request was not an abuse of discretion and did not result in an unfair trial.

1-09-3255

Finally, defendant asserts that certain remarks about the condition of defendant's property made by plaintiff's counsel resulted in an unfair trial in that those remarks constituted an attempt to deliberately prejudice defendant. The excerpt of trial transcript cited by defendant shows that, after defense counsel's objection was sustained, plaintiff's counsel began to state purported legal authority for the admissibility of the answer she sought to elicit. When the court again stated that the objection was sustained, counsel moved on. Contrary to defendant's claim, those comments did not result in an unfair trial. For the reasons previously discussed, none of the asserted errors deprived defendant of a fair trial and, on those bases also, the denial of the motion for a new trial was not improper.

Finally, defendant contends that its posttrial request for reconsideration of the summary judgment granted years earlier in the City's favor was improperly denied.

The purpose of a motion to reconsider is to bring to the court's attention (1) newly discovered evidence not available at the time of the hearing; (2) changes in the law; or (3) errors in the court's previous application of the law. Stringer v. Packaging Corp. of America, 351 Ill. App. 3d 1135, 1140 (2004). Decisions to grant or deny motions for reconsideration fall within the court's discretion and will not be disturbed absent an abuse of such. Stringer, 351 Ill. App. 3d at 1140.

Summary judgment should be granted where the pleadings, depositions, affidavits, admissions, and exhibits on file, when viewed in the light most favorable to the nonmovant, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2008); Swope v. Northern Illinois Gas

-14-

1-09-3255

Co., 251 Ill. App. 3d 850, 853 (1993).

The City had moved for summary judgment on the basis that the tree was on defendant's property and, for that reason, the City had no duty to maintain it. The gist of defendant's argument in its motion for reconsideration was that the court improperly failed to consider the overhang of the tree limb to be the City's duty; it alleged that the court's duty inquiry improperly focused on "the property line, to defendant's property" when the proper inquiry would have been to "stand on the City sidewalk and look up." On appeal, rather than presenting any new authority, defendant relies primarily upon two pre-1935 cases, which it acknowledges are not binding as precedent. Moreover, defendant reiterates that the tree was on its own property.

Here, the court properly ruled that the City did not owe a duty to maintain or prevent injury from a tree on defendant's private property. See Ware v. City of Chicago, 375 Ill. App. 3d 574, 581 (2007) (no duty to prevent injury from porch collapse on private property); Donovan v. Village of Ohio, 397 Ill. App. 3d 844, 849-50 (2010) (no duty to prevent injury from fire on private property); Stigler v. City of Chicago, 48 Ill. 2d 20, 24-25 (1971) (no duty to prevent injury from lead paint on private property). The City did not owe a duty to prevent injury from the overhanging tree limb. Accordingly, summary judgment in its favor was properly granted. The court did not abuse its discretion in denying defendant's motion to reconsider the grant of summary judgment.

CONCLUSION

For all of the foregoing reasons, we affirm the judgment of the circuit court.

Affirmed.

GALLAGHER, P.J., and O'BRIEN, J., concur.

-15-

REPORTER OF DECISIONS - ILLINOIS APPELLATE COURT

MARIA ORTIZ,

Plaintiff-Appellee,

v.

JESUS PEOPLE, U.S.A., a Not-For-Profit Corporation, d/b/a The Friendly Towers,

Defendant-Appellant

(The City of Chicago, a Municipal Corporation,

Defendant-Appellee).

No. 1-09-3255

Appellate Court of Illinois
First District, FOURTH DIVISION

November 12, 2010

Justice Margaret O'Mara Frossard authored the opinion of the court:

Presiding Justice Michael J. Gallagher and Justice Sheila M. O'Brien concur.

Appeal from the Circuit Court of Cook County.
The Hon. Thomas R. Chiola, Judge Presiding.

**COUNSEL FOR DEFENDANT-APPELLANT**
Stellato & Schwartz, Ltd., Chicago, IL 60602
OF COUNSEL: Esther Joy Schwartz, Theodore W. Pannkoke, Thomas A. Kiepura,
and Anthony G. Karamuzis

**COUNSEL FOR PLAINTIFF-APPELLEE**
Law Office of Josette Belvedere, Chicago, IL 60610

**COUNSEL FOR DEFENDANT-APPELLEE**
Mara S. Georges, Corporation Counsel of the City of Chicago, Chicago, IL 60602
OF COUNSEL:  Benna Ruth Solomon, Myriam Zreczny Kasper and Kerrie Maloney Laytin