# Illinois Official Reports

## Appellate Court

---

### *Raab v. Frank*, 2019 IL App (2d) 171040

---

| | |
|---|---|
| Appellate Court Caption | KIRK RAAB, Plaintiff, v. KENNETH FRANK, Defendant and Third-Party Plaintiff-Appellant (David A. Grossen and Virginia J. Grossen, Third-Party Defendants-Appellees). |
| District & No. | Second District<br>Docket No. 2-17-1040 |
| Filed | February 6, 2019 |
| Decision Under Review | Appeal from the Circuit Court of Jo Davies County, No. 13-L-27; the Hon. William A. Kelly, Judge, presiding. |
| Judgment | Affirmed in part and reversed in part.<br>Cause remanded. |
| Counsel on Appeal | Raymond J. Melton, of SmithAmundsen LLC, of Rockford, for appellant.<br><br>Stephanie R. Fueger and McKenzie R. Hill, of O'Connor & Thomas, P.C., of Dubuque, Iowa, for appellees. |
| Panel | JUSTICE SCHOSTOK delivered the judgment of the court, with opinion.<br>Justices Jorgensen and Spence concurred in the judgment and opinion. |

**OPINION**

¶ 1    The plaintiff, Kirk Raab of the Jo Daviess County Sheriff's Department, was driving his squad car west on Stagecoach Road in Scales Mound when he collided with a cow owned by the defendant, Kenneth Frank. Raab filed an action against Frank for injuries he suffered during the collision. Frank thereafter filed a third-party complaint for contribution against his neighbors, David A. and Virginia J. Grossen, asserting that the cow had gotten out through a fence they had failed to maintain. The trial court subsequently granted the Grossens' motion for summary judgment. Frank appeals from that order. We affirm in part, reverse in part, and remand for additional proceedings.

¶ 2                                I. BACKGROUND

¶ 3    The Grossens own a parcel of real estate in rural Jo Daviess County (Parcel A). Virginia Grossen inherited Parcel A from her mother in 2005 and executed a quitclaim deed to convey the property to her and her husband jointly in 2006. The Grossens do not live on Parcel A. They rent Parcel A to lessees for agricultural purposes, but livestock are not kept on Parcel A. The parcel of land adjacent to Parcel A (Parcel B) is owned by the Dominic T. and Donna M. Pintozzi Trust, with Dominic and Donna Pintozzi as trustees. A fence runs between Parcel A and Parcel B.

¶ 4    The Pintozzis have rented Parcel B to Frank since 2009. Frank uses Parcel B for pasturing cattle. Before agreeing to rent Parcel B, Frank inspected it to ensure that it was suitable for pasturing his cattle. Frank looked at the fence that divided Parcels A and B and determined that it was sufficient to keep his cattle enclosed on Parcel B. After he rented the property, Frank rode his ATV to the fence and inspected it every Sunday.

¶ 5    Frank and the Pintozzis entered into an oral lease regarding Parcel B. Under the lease, Frank was responsible for maintaining the portion of the fence on Parcel B. Frank subsequently learned that an agreement had been signed by the prior owners of Parcels A and B regarding fence maintenance. The Grossens were not aware of the fence agreement prior to 2011.

¶ 6    Frank knew that the Grossens owned Parcel A but did not live on it. Frank knew how to contact the Grossens if necessary. The Grossens were not aware that Frank was renting Parcel B or using that land to pasture cattle.

¶ 7    In July 2009, July 2010, and July 2011, heavy rainstorms damaged portions of the fence that divided Parcels A and B. After each of these three storms, Frank repaired the fence. He did not call the Grossens after any of the rainstorms to let them know that the fence had been damaged or that it might need repairs. Frank believed that the repairs he had made to the fence in 2009, 2010, and 2011 were sufficient to keep the cattle restrained.

¶ 8    On November 10, 2011, Frank's cattle escaped and entered onto the road. Raab was driving on the road and collided with one of Frank's cows. After the accident, Frank contacted the Grossens to inform them of the accident. Frank told the Grossens that he believed that the fence dividing Parcels A and B was in bad repair. The Grossens then made plans to have work done on the fence. In the spring of 2012, the Grossens spent $2000 to clear brush around the west side of the fence and to have the western half of the fence replaced with new posts and new wire.

¶ 9     On November 8, 2013, Raab filed a one-count complaint against Frank for personal injuries he suffered during the collision. Raab alleged that Frank had violated the Illinois Domestic Animals Running at Large Act (Running at Large Act) (510 ILCS 55/1 (West 2010)) by failing to use the reasonable care necessary to restrain his cattle from straying from the confinement area. In his answer, Frank raised the affirmative defense that he used reasonable care in restraining the cattle because they were kept in a well-fenced area.

¶ 10    On August 14, 2014, Frank filed a three-count third-party complaint against the Grossens. As amended, the complaint sought contribution based on theories of negligence, breach of duty under the Fence Act (765 ILCS 130/3 (West 2010)), and breach of contract. Frank alleged that the cattle escaped and injured Raab because the Grossens did not keep their portion of the fence in good repair.

¶ 11    On June 9, 2016, the trial court approved a $225,000 settlement agreement between Raab and Frank. On that same day, the Grossens filed a motion for summary judgment on Frank's third-party complaint. The Grossens argued that count I of Frank's complaint was barred by the Running at Large Act, count II was barred by the Fence Act, and count III should be dismissed because the fence agreement did not run with the land.

¶ 12    The record on summary judgment included the deposition testimony of the Grossens and Frank. The Grossens testified that they were not aware that there was a problem with the fence until Frank told them, following the accident. Frank testified that he checked both his and the Grossens' portions of the fence every Sunday. The accident occurred on a Thursday night. After the accident, he checked the fence. He determined that a jumping deer had struck the top of the Grossens' portion of the fence and had broken it. Frank testified that the Grossens could have discovered this only if they inspected the fence daily. However, in his 40 years as a farmer, he had inspected the fences only weekly. Further, he did not know anyone in the farming community who checked their fences daily.

¶ 13    On September 7, 2016, the trial court granted the Grossens summary judgment on counts I and II of Frank's third-party complaint. As to count I, the trial court determined that the Running at Large Act barred Frank's contribution claim. As to count II, the trial court found that the rights and responsibilities created under the Fence Act were not applicable to the facts of the case. The trial court denied the Grossens' motion with respect to count III, finding that the fence agreement ran with the land and that Frank had a viable cause of action for breach of that agreement.

¶ 14    On August 1, 2017, the Grossens filed their second motion for summary judgment as to count III of Frank's third-party complaint. The Grossens argued that, because count III was premised on a breach of contract, Frank could not recover under the Joint Tortfeasor Contribution Act (Contribution Act) (740 ILCS 100/2 (West 2010)).

¶ 15    On November 27, 2017, the trial court granted the Grossens' motion for summary judgment as to count III. The trial court found that the contract between Frank and the Grossens was the only basis for contribution. As such, there was no connection between Raab and the Grossens to justify a claim under the Contribution Act. Following the trial court's ruling, Frank filed a timely notice of appeal.

## II. ANALYSIS

### A. The Contribution Act

On appeal, Frank argues that the trial court erred in granting the Grossens summary judgment on each of the three counts of his third-party complaint. Frank maintains that the trial court incorrectly determined that he could not bring a contribution claim against the Grossens.

The purpose of a motion for summary judgment is to determine whether a genuine issue of material fact exists (*People ex rel. Barsanti v. Scarpelli*, 371 Ill. App. 3d 226, 231 (2007)), and such a motion should be granted only when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law" (735 ILCS 5/2-1005(c) (West 2016)). In determining the existence of a genuine issue of material fact, a court must construe the pleadings, depositions, admissions, and affidavits strictly against the movant and liberally in favor of the opponent. *Purtill v. Hess*, 111 Ill. 2d 229, 240 (1986). Summary judgment may be granted only where the facts are susceptible to a single reasonable inference. *Consolino v. Thompson*, 127 Ill. App. 3d 31, 33 (1984). An order granting summary judgment should be reversed if the evidence shows that a genuine issue of material fact exists or if the judgment is incorrect as a matter of law. *Clausen v. Carroll*, 291 Ill. App. 3d 530, 536 (1997). We review *de novo* the trial court's grant of a motion for summary judgment. *AUI Construction Group, LLC v. Vaessen*, 2016 IL App (2d) 160009, ¶ 16.

Contribution is a statutory remedy in Illinois, governed by the Contribution Act (740 ILCS 100/2 (West 2010)). The right to contribution arises under the Contribution Act from tort liability, and the statute apportions recovery among the contributors on the basis of their relative culpability. Section 2 of the Contribution Act states:

> "(a) Except as otherwise provided in this [Contribution] Act, where 2 or more persons are subject to liability in tort arising out of the same injury to person or property, or the same wrongful death, there is a right of contribution among them, even though judgment has not been entered against any or all of them.
>
>   (b) The right of contribution exists only in favor of a tortfeasor who has paid more than his pro rata share of the common liability, and his total recovery is limited to the amount paid by him in excess of his pro rata share. No tortfeasor is liable to make contribution beyond his own pro rata share of the common liability." *Id.*

Section 3 of the Act, concerning the amount of contribution, provides:

> "The pro rata share of each tortfeasor shall be determined in accordance with his relative culpability. However, no person shall be required to contribute to one seeking contribution an amount greater than his pro rata share unless the obligation of one or more of the joint tortfeasors is uncollectable. In that event, the remaining tortfeasors shall share the unpaid portions of the uncollectable obligation in accordance with their pro rata liability." *Id.* § 3.

Thus, the basis for a contributor's obligation rests on his liability in tort to the injured party. *J.I. Case Co. v. McCartin-McAuliffe Plumbing & Heating, Inc.*, 118 Ill. 2d 447, 462 (1987). The bases for liability among the contributors need not be the same. *Id.* Further, the basis for contribution need not mirror the theory of recovery asserted in the original action. *Id.* The Contribution Act is founded upon the equitable doctrine of unjust enrichment. *People v. Brockman*, 143 Ill. 2d 351, 366 (1991).

¶ 21    Here, Frank's contribution claim is premised on his allegation that the Grossens negligently maintained their portion of the fence, which allowed Frank's cattle to escape and injure Raab. The trial court determined that (1) Frank's complaint was barred by the Running at Large Act, (2) the Fence Act was not applicable, and (3) he could not rely on a contract for a contribution claim. We consider each of the trial court's holdings in turn.

¶ 22                            B. The Running at Large Act

¶ 23    The Running at Large Act governs domestic animals running at large. In 1895, the statute imposed strict liability on a defendant for damages caused by domestic animals running at large. *McQueen v. Erickson*, 61 Ill. App. 3d 859, 862 (1978). In 1931, the statute was amended to provide that the owner or keeper of such animals was not liable for damages if he was able to establish that he used reasonable care in restraining the animals and did not know that the animals were running at large. *Id.* Illinois courts have consistently held that the statute is designed to provide redress for injuries caused by animals grazing at pasture beyond the control and supervision of their owners. *Zears v. Davison*, 154 Ill. App. 3d 408, 411 (1987). To recover damages under this statute, the plaintiff must prove only that he was injured by an animal running at large owned or kept by the defendant. To avoid strict liability, the defendant must then affirmatively plead and prove that (1) he exercised due care in restraining his animal and (2) he lacked knowledge that it had escaped. *Corona v. Malm*, 315 Ill. App. 3d 692, 697 (2000).

¶ 24    In *Heyen v. Willis*, 94 Ill. App. 2d 290, 296 (1968), the court held that only the animal's owner could be liable for the animal's conduct under the Running at Large Act. In that case, Heyen filed a wrongful-death action against a landlord (Willis) and his tenant (Lyons). *Id.* at 291. According to the record, the decedent had died when he lost control of his vehicle trying to avoid cattle that were owned by Lyons and had strayed from Willis's property. *Id.* Both Lyons and Willis knew that the pasture fences were inadequate to restrain cattle. *Id.* at 292. Although the rental agreement required Lyons to repair the fence, Willis never inspected to ensure that the fence had been repaired. *Id.* Heyen argued that these allegations demonstrated that Willis had breached his legal duty to the decedent. *Id.* Heyen further alleged that Willis was liable as an animal "keeper" under the Running at Large Act. *Id.* The trial court granted summary judgment to Willis. *Id.* at 291.

¶ 25    On appeal, the reviewing court affirmed the trial court's judgment. *Id.* at 297. The court explained that Willis was not a "keeper" of the cattle because he owned no interest in the cattle, was not responsible for their care, and had no right to their custody or control. *Id.* at 295. The court noted that a lessor had a common-law duty to guard against damage caused by strays that escaped from the premises as a result of a defect on the premises that was known at the time of the lease. *Id.* However, the court found that, in adopting the Running at Large Act in 1871, the legislature limited liability to the strays' owner or keeper. *Id.* at 296. The court declined to extend liability beyond the owner or keeper, explaining:

    "The likelihood of injury or damage from estrays, and the attendant duty to use care to prevent such injury or damage, lies not in the place where animals may be kept but in their propensity to roam, their wanderlust. Thus, the duty to guard against injury or damage by estrays is cast by law upon the owner or keeper of the animals, and liability for injury or damage caused by them must be predicated upon the [Running at Large] Act. No common law duty exists upon the part of the landowners in this case and the

question of their negligence in placing their premises in the possession of Lyons for the grazing of cattle should not be submitted to a jury." *Id.* at 296-97.

¶ 26    Thus, although the Contribution Act suggests that Frank has a right to contribution from the Grossens for the damages he paid to Raab (see 740 ILCS 100/2 (West 2010)), the Running at Large Act suggests that Frank must bear all of those losses himself (see *Heyen*, 94 Ill. App. 2d at 296). The question hence is how to reconcile these two seemingly conflicting statutes.

¶ 27    The answer lies within our supreme court's decision in *Doyle v. Rhodes*, 101 Ill. 2d 1 (1984). In that case, the supreme court analyzed the interplay between the Contribution Act and the Workers' Compensation Act (Ill. Rev. Stat. 1981, ch. 48, ¶¶ 138.5(a), 138.11 (now codified at 820 ILCS 305/5(a), 11)). There, the plaintiff, Charles Doyle, was working as a highway flagman for Rein, Schultz & Dahl (Rein), a highway contractor, when he was struck by an automobile driven by the defendant, Kathleen Rhodes. *Doyle*, 101 Ill. 2d at 4. Doyle filed a complaint against Rhodes, who in turn filed a third-party complaint against Rein, seeking contribution. *Id.* at 4-5. Rhodes alleged that Rein was negligent and had violated the Road Construction Injuries Act (Ill. Rev. Stat. 1981, ch 121, ¶ 314.1 *et seq.* (now codified at 430 ILCS 105/0.01 *et seq.* and known as the Road Worker Safety Act)). *Doyle*, 101 Ill. 2d at 5. In response, Rein argued that, because of the exclusive-remedy provision of the Workers' Compensation Act, it was not liable in tort to Doyle, its employee, and consequently was not liable to Rhodes under the contribution statute. *Id.* at 6.

¶ 28    The supreme court held that the fact that an action by Doyle against Rein was barred by the Workers' Compensation Act did not provide Rein with immunity from a third-party action. *Id.* at 8, 14. The supreme court explained that this was because "the intent of the contribution statute was to reach anyone who is culpable regardless of whether they have been immunized from a direct tort action by some special defense or privilege." *Id.* at 9.

¶ 29    Based on *Doyle*, the fact that Raab would be barred from pursuing an action against the Grossens by the Running at Large Act has no bearing on Frank's ability to seek contribution from the Grossens. The trial court therefore erred in determining that the Running at Large Act barred Frank's claim for contribution.

¶ 30    In so ruling, we reject the Grossens' argument that the instant case is analogous to our supreme court's decision in *Hopkins v. Powers*, 113 Ill. 2d 206 (1986). In that case, our supreme court considered whether a dramshop is "subject to liability in tort" for purposes of a cause of action brought under the Contribution Act. *Id.* at 208. The plaintiff, after being served alcohol by the dramshop, was involved in a car accident that caused personal injuries to others, as well as property damage. *Id.* at 209. After compensating those he had injured, the plaintiff filed a contribution action against the defendant, the dramshop operator. *Id.* The supreme court decided that a dramshop that contributes to the intoxication of a person who later causes injury to another is not "liable in tort" under the Dramshop Act (Ill. Rev. Stat. 1983, ch. 43, ¶ 135 (now codified at 235 ILCS 5/5-21)) for purposes of an action for contribution brought by the intoxicated party. *Hopkins*, 113 Ill. 2d at 210. The supreme court concluded that, although serving intoxicating beverages can impose liability on dramshops, that liability is not grounded in tort but arises purely from the Dramshop Act. *Id.* at 211. The supreme court held that, because the liability on dramshops under the Dramshop Act is "*sui generis* and exclusive," the defendant was not " 'liable in tort' " for purposes of the Contribution Act. *Id.* Thus, the plaintiff could not maintain an action against the dramshop under the Contribution Act. *Id.* The supreme court additionally held that the plaintiff could not recover under the Dramshop Act

because he was not among the class of innocent third persons who may recover under the Dramshop Act. *Id.* at 211-12. The supreme court explained:

> "Plaintiff's attempt to use the Contribution Act to recover a portion of the losses he incurred in reaching settlements for the damages he caused by his intoxication amounts to an attempt to circumvent the statutory bar of the Dramshop Act. Recognizing that a direct route to recovery is unavailable, plaintiff seeks an indirect route by way of the Contribution Act. But because plaintiff is barred from direct recovery under the Dramshop Act, he is barred as well from recovery under the Contribution Act." *Id.* at 212.

¶ 31    *Hopkins* is distinguishable. There, the plaintiff sought contribution from the defendant for selling alcohol. However, selling alcohol is not a tortious act. *Id.* at 211. Thus, the defendant could not be liable in tort. *Id.* Conversely, in the instant case, Frank argued that the Grossens were negligent for failing to maintain the portion of the fence on their property. A failure to maintain one's property can be tortious. See *Ortiz v. Jesus People, USA*, 405 Ill. App. 3d 967, 973 (2010) (landowner can be liable for negligently allowing a dangerous condition on his property).

¶ 32                                    C. The Fence Act
¶ 33    We next address whether the trial court properly found that Frank could not maintain a cause of action under the Fence Act. The Fence Act provides that "[w]hen 2 or more persons have lands adjoining, each of them shall make and maintain a just proportion of the division fence between them." 765 ILCS 130/3 (West 2010). If a person fails to maintain his fence, then

> "[A]ny two fence viewers of the town or precinct, as the case may be, shall, on complaint by the party aggrieved, after giving due notice to each party, examine such fence, and if they deem the same to be insufficient, they shall so notify the delinquent party, and direct him to repair or rebuild the same within such time as they may deem reasonable." *Id.* § 6.

Further, if any person who is liable to contribute to the repair of a fence fails or neglects to do so, then the injured party, upon providing 10 days' written notice, may repair the fence at the expense of the person neglecting to repair the fence. *Id.* § 11.

¶ 34    We believe that the Fence Act clearly provides that, before a landowner can be liable, he must be given notice of a problem with the portion of fence that he is required to maintain and the opportunity to fix the problem. See *id.* §§ 6, 11. Here, before the accident, Frank did not give the Grossens any notice that there was any problem with their portion of the fence. Indeed, Frank testified that he was not aware that there was a problem with the Grossens' portion of the fence until after the accident. Thus, based on Frank's failure to provide notice to the Grossens, the trial court properly determined that Frank could not maintain an action under the Fence Act. Accordingly, we find that the trial court properly granted the Grossens summary judgment on count II of Frank's complaint.

¶ 35    In so ruling, we reject Frank's arguments that the Grossens waived their right to receive notice that there was a problem with their portion of the fence because (1) they acknowledged after the accident that they had an obligation to fix their portion of the fence and (2) the fence agreement required them to maintain their portion of the fence. Under the Fence Act, acknowledging ownership of a fence or being obligated to maintain the fence is not the same as

- 7 -

receiving timely notice that the fence is in need of repair. The Grossens could have waived their right to notice under the Fence Act only if they were aware of the problem with the fence and had an opportunity to fix it before the accident. However, the record clearly reveals that they were not aware of any such problem.

¶ 36    We also find Frank's reliance on *McKee v. Trisler*, 311 Ill. 536 (1924), to be misplaced. In that case, the defendant's bull entered the plaintiff's land through the fence that the defendant shared with the plaintiff, and the bull killed one of the plaintiff's mules and injured another. *Id.* at 538. The plaintiff sued for damages. *Id.* The trial court instructed the jury that, if it found that the plaintiff's portion of the fence was in good repair when the defendant's bull entered the plaintiff's property and injured the mules, then it should find in the plaintiff's favor. *Id.* at 540-41. The jury found in the plaintiff's favor. *Id.* at 538. On review, both the appellate court and the supreme court affirmed. *Id.* at 547. The supreme court explained that the jury instruction properly stated the law because the plaintiff had the burden to prove that his portion of the fence complied with the statute or that the defendant's bull came through the defendant's portion of the fence. *Id.* at 544-46.

¶ 37    *McKee* is distinguishable in two regards. First, it addresses a landowner's burden of proof under the Fence Act in order to recover damages when his neighbor's livestock trespasses on his land. Thus, that case would be analogous here only if the Grossens had filed an action against Frank for his trespassing cattle. Second, because damages were sought by the adjacent landowner, and not the bull's owner, *McKee* contains no discussion of what notice the bull's owner would have had to provide regarding the condition of the adjacent landowner's portion of the fence before he could seek damages. Absent such a discussion, *McKee* is not applicable to the case at bar.

¶ 38                    D. Contribution Claim Based on Breach of Contract

¶ 39    As noted earlier, although the trial court found that the fence agreement ran with the land and that Frank had stated a viable claim under that agreement, it held that the contract between Frank and the Grossens was not a proper basis on which Frank could seek contribution for the damages he had paid to Raab.

¶ 40    We believe that the trial court's decision on this matter is incorrect, as it is inconsistent with this court's analysis in *Giordano v. Morgan*, 197 Ill. App. 3d 543 (1990). In that case, after Giordano was in a car accident, she filed a complaint against Morgan, who had been driving the car that struck her, as well as her own insurance agent and insurance company (insurance defendants) for not procuring the replacement insurance that she had purchased. *Id.* at 544-45. Giordano settled with the insurance defendants for $37,750. *Id.* at 547. Following a jury trial, Giordano received a judgment against Morgan for $16,392. *Id.* Morgan thereafter argued that the Contribution Act should apply and that the insurance defendants' settlement should be set off against the jury verdict, reducing the judgment against her to zero. *Id.* The trial court agreed and reduced the judgment against her. *Id.* On appeal, this court reversed. *Id.* at 552.

¶ 41    We explained that, in order for contribution to apply, "one or more persons [must be] liable in tort arising out of the same injury." (Emphasis and internal quotation marks omitted.) *Id.* at 548. We found that Morgan was clearly liable. We stated that it was unclear whether the insurance defendants were similarly liable because the counts against them were based on breach of contract. *Id.* We found, however, that, although breach of contract is "certainly a

nontort theory, it is not determinative as to whether the parties might also be 'subject to liability in tort' for purposes of contribution." *Id.* (quoting *Joe & Dan International Corp. v. United States Fidelity & Guaranty Co.*, 178 Ill. App. 3d 741, 750 (1988)).

¶ 42 We then addressed whether Giordano's claims against Morgan and the insurance defendants were for the "same injury." *Id.* at 550. We held that the injuries were related but not the same. We explained that the actions of the insurance defendants were related to Morgan's only because were it not for Morgan's negligence and Giordano's resulting injuries, the insurance defendants' failure to procure the required insurance would not have been at issue. *Id.* at 551. We held that, because the injuries were not the same, the Contribution Act was inapplicable and the trial court erred in reducing the judgment on the verdict. *Id.* at 552.

¶ 43 Here, as set forth in *Giordano*, Frank is not prohibited from invoking the Contribution Act to seek recovery from the Grossens based on a breach-of-contract theory. Rather, this court looks to whether the injury for which Frank seeks contribution is the same injury for which Frank is liable. Frank is seeking contribution for the damages he paid to Raab due to the straying cattle. As this is the same injury that Frank is liable for, the trial court erred in finding that Frank could not seek contribution under the fence agreement.

¶ 44 In so ruling, we find the Grossens' reliance on *People ex rel. Hartigan v. Community Hospital of Evanston*, 189 Ill. App. 3d 206, 213-14 (1989), and *Wiebolt Stores, Inc. v. Schottenstein*, 111 B.R. 162, 169-71 (N.D. Ill. 1990), to be misplaced. Each of those cases involved a breach of fiduciary duty, which is not a tortious act that is subject to contribution. See *Kinzer v. City of Chicago*, 128 Ill. 2d 437, 445 (1989).

¶ 45 We also reject the Grossens' reliance on *Ball Corp. v. Bohlin Building Corp.*, 187 Ill. App. 3d 175, 177 (1989). The Grossens assert that the case stands for the proposition that there is a strong presumption that parties to a contract intend that the contract's provisions apply only to them. That presumption can be overcome only if the language in the contract strongly implies that third parties were intended to benefit from the contract. See *id.* Because the fence agreement makes no reference to Raab, the Grossens insist that the fence agreement does not impose liability on them for Raab's injuries.

¶ 46 We do not disagree with the principles set forth in *Ball Corp.* However, as that case does not discuss contribution between joint tortfeasors, it is not pertinent to the instant case. Rather, what is pertinent is that a fence agreement existed between the parties. In order for Frank to be able to recover contribution from the Grossens, some relationship must have existed between them that would render contribution equitable. See *Ohio Savings Bank v. Manhattan Mortgage Co.*, 455 F. Supp. 2d 247, 255 (S.D.N.Y. 2006). The fence agreement establishes that relationship between the Grossens and Frank.

¶ 47                                       III. CONCLUSION

¶ 48 For the reasons stated, we affirm the judgment of the circuit court of Jo Daviess County granting summary judgment to the Grossens on count II of Frank's third-party complaint, regarding a violation of the Fence Act. We reverse the court's judgment granting summary judgment to the Grossens on counts I and III of Frank's third-party complaint and remand for additional proceedings on those counts.

¶ 49          Affirmed in part and reversed in part.

¶ 50          Cause remanded.